**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION**

| | |
|---|---|
| DONNA ALLISON, Individually and as a representative of a class of similarly situated persons, on behalf of the L BRANDS, INC. 401(K) SAVINGS AND RETIREMENT PLAN,<br><br>     Plaintiff,<br><br>  v.<br><br>L BRANDS, INC., L BRANDS SERVICE COMPANY, LLC, THE RETIREMENT PLAN COMMITTEE OF THE L BRANDS, INC. 401(K) SAVINGS AND RETIREMENT PLAN and DOES No. 1-10, Whose Names Are Currently Unknown,<br><br>     Defendants. | CASE NO.  2:20-cv-06018<br><br><br>**CLASS ACTION COMPLAINT**<br><br>JURY TRIAL DEMANDED |

## I.  **INTRODUCTION**

1.  Plaintiff, Donna Allison ("Plaintiff"), individually in her capacity as a former participating employee of the L Brands, Inc. 401(k) Savings and Retirement Plan ("Plan"), brings this action under 29 U.S.C. § 1132, on behalf of the Plan and a class of similarly-situated participating employees, against Defendants, L Brands, Inc., L Brands Service Company, LLC ("Service Company"), the Retirement Plan Committee of the L Brands, Inc. 401(k) Savings and Retirement Plan ("Administrative Committee"), and Does No. 1-10, who are members of the Administrative Committee or other fiduciaries of the Plan and whose names are currently unknown (collectively, "Defendants"), for breach of their fiduciary duties under the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1001, *et seq.*, and related breaches of applicable law beginning six years from the date this action is filed and continuing to the date of judgment (the "Class Period").

2.     Defined contribution plans that are qualified as tax-deferred vehicles have become the primary form of retirement savings in the United States and, as a result, America's *de facto* retirement system.  Unlike traditional defined benefit retirement plans, in which the employer typically promises a calculable benefit and assumes the risk with respect to high fees or under-performance of pension plan assets used to fund defined benefits, 401(k) plans operate in a manner in which participants bear the risk of high fees and investment underperformance.

3.     The importance of defined contribution plans to the United States retirement system has become pronounced as employer-provided defined benefit plans have become increasingly rare as an offered and meaningful employee benefit.

4.     As of December 31, 2019, the Plan had 33,761 participants with account balances and assets totaling approximately $1.6 billion, placing it in the top 0.1% of defined contribution plans by plan size.[1]  Defined contribution plans with substantial assets, like the Plan, have significant bargaining power and the ability to demand low-cost administrative and investment management services within the marketplace for administration of defined contribution plans and the investment of defined contribution assets.  The marketplace for defined contribution retirement plan services is well-established and can be competitive when fiduciaries of defined contribution retirement plans act in an informed and prudent fashion.

5.     Defendants maintain the Plan and are responsible for selecting, monitoring, and retaining the service provider(s) that provide investment, recordkeeping, and other administrative services.  Defendants are fiduciaries under ERISA, and, as such, are obligated to (a) act for the exclusive benefit of participants, (b) ensure that the investment options offered through the Plan are prudent and diverse, and (c) ensure that Plan expenses are fair and reasonable.

---

[1]The BrightScope/ICI Defined Contribution Plan Profile: A Close Look at 401(k) Plans, 2017 (pub. August 2020).

6.     Defendants have breached their fiduciary duties to the Plan and, as detailed below, have: (1) allowed unreasonable recordkeeping/administrative expenses to be charged to the Plan; and (2) selected, retained, and/or otherwise ratified high-cost investments, instead of offering more prudent alternative investments when such prudent investments were readily available at the time that they were chosen for inclusion within the Plan and throughout the Class Period (defined below).

7.     To remedy these fiduciary breaches and other violations of ERISA, Plaintiff brings this action under ERISA Sections 404, 409 and 502, 29 U.S.C. §§ 1104, 1109 and 1132, to recover and obtain all losses resulting from each breach of fiduciary duty.  In addition, Plaintiff seeks such other equitable or remedial relief for the Plan and the proposed class defined below (the "Class") as the Court may deem appropriate and just under all of the circumstances.

8.     Plaintiff specifically seeks the following relief:

a.     A declaratory judgment holding that the acts of Defendants described herein violate ERISA and applicable law;

b.     A permanent injunction against Defendants prohibiting the practices described herein and affirmatively requiring them to act in the best interests of the Plan and its participants;

c.     Equitable, legal or remedial relief for all losses and/or compensatory damages;

d.     Attorneys' fees, costs and other recoverable expenses of litigation; and

e.     Such other and additional legal or equitable relief that the Court deems appropriate and just under all of the circumstances.

## II.     THE PARTIES

9.     Plaintiff is a former employee of L Brands, Inc. and is a former participant in the Plan under 29 U.S.C. § 1002(7).  Plaintiff is a resident of Reynoldsburg, Ohio.

10.     L Brands, Inc. is a Delaware corporation that is headquartered in Columbus, Ohio. It is "an international company that sells lingerie, personal care and beauty products, apparel and accessories," which is known for its Victoria Secret and Bath and Body Works brands.  At all pertinent times, L Brands, Inc. was a fiduciary of and party in interest with respect to the Plan pursuant to 29 U.S.C. §§ 1002 and 1102.

11.     Service Company is a Delaware limited liability company headquartered in Columbus, Ohio.  Service Company is a subsidiary of L Brands.  At all pertinent times, Service Company was a fiduciary of and party in interest with respect to the Plan pursuant to 29 U.S.C. §§ 1002 and 1102.  Service Company and L Brands, Inc. are referred to hereafter individually and collectively as "L Brands."

12.     The Administrative Committee is the Plan administrator and is a fiduciary under ERISA pursuant to 29 U.S.C. §§ 1002 and 1102.  The Administrative Committee maintains its address at L Brand's corporate headquarters in Columbus, Ohio.  The Administrative Committee and its members are appointed by L Brands to administer the Plan on L Brand's behalf.

13.     Does No. 1-10 are the members of the Administrative Committee and, by virtue of their membership, fiduciaries of the Plan or otherwise are fiduciaries to the Plan.  Plaintiff is currently unable to determine the membership of the Administrative Committee or the identity of the other fiduciaries of the Plan because, despite reasonable and diligent efforts, it appears that the membership of the Administrative Committee and the identity of any other fiduciaries is not publicly available.  As such, these defendants are named Does 1-10 as placeholders.  Plaintiff will move, pursuant to Rule 15 of the Federal Rules of Civil Procedure, to amend this Complaint to name the members of the Administrative Committee and other responsible individuals as defendants as soon as their identities are discovered.

## III.    JURISDICTION AND VENUE

14.    Plaintiff seeks relief on behalf of the Plan pursuant to ERISA's civil enforcement remedies with respect to fiduciaries and other interested parties and, specifically, under 29 U.S.C. § 1109 and 29 U.S.C. § 1132.

15.    This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 because this action arises under the laws of the United States.

16.    Venue is proper in this District pursuant to ERISA Section 502(e), 29 U.S.C. § 1332(e), and 28 U.S.C. § 1391 because L Brand's principal place of business is in this District and the Plan is administered from this District. Furthermore, a substantial part of the acts and omissions giving rise to the claims asserted herein occurred in this District.

17.    Plaintiff has standing to bring this action. ERISA Section 502(a)(2), 29 U.S.C. § 1132(a)(2), authorizes any participant, fiduciary or the Secretary of Labor to bring suit as a representative of a plan, with any recovery necessarily flowing to a plan. As explained herein, the Plan has suffered millions of dollars in losses resulting from Defendants' fiduciary breaches and remains vulnerable to continuing harm, all redressable by this Court. In addition, although standing under ERISA Section 502(a)(2), 29 U.S.C. § 1132(a)(2), is established by these Plan-wide injuries, Plaintiff and all Plan participants suffered financial harm as a result of the Plan's imprudent investment options and excessive fees, and were deprived of the opportunity to invest in prudent options with reasonable fees, among other injuries.

## IV.    FACTUAL ALLEGATIONS

### A.    Background And Plan Structure

18.    The Plan is a single-employer 401(k) plan, in which participants direct the investment of their contributions into various investment options offered by the Plan. Each participant's account is credited with the participant contributions, employer matching

contributions, any discretionary contributions, and earnings or losses thereon. The Plan pays Plan expenses from Plan assets, and substantially all administrative expenses are paid by participants as a reduction of investment income. Each participant's account is charged with the amount of distributions taken and an allocation of administrative expenses. The available investment options for participants of the Plan include various mutual funds, collective trusts, L Brands stock, and a self-directed brokerage account.

19. Mutual funds are publicly-traded investment vehicles consisting of a pool of monetary contributions collected from many investors for the purpose of investing in a portfolio of equities, bonds, and other securities. Mutual funds are operated by professional investment advisers, who, like the mutual funds, are registered with the Securities and Exchange Commission ("SEC"). Mutual funds are subject to SEC regulation, and are required to provide certain investment and financial disclosures and information in the form of a prospectus.

20. Collective trusts are, in essence, mutual funds without the SEC regulation. Collective trusts fall under the regulatory purview of the Office of the Comptroller of the Currency or individual state banking departments. Collective trusts were first organized under state law in 1927 and were blamed for the market crash in 1929. As a result, collective trusts were severely restricted, giving rise to the more transparent and publicly-traded mutual funds. Today, banks create collective trusts only for their trust clients and for employee benefit plans, like the Plan. The main advantage of opting for a collective trust, rather than a mutual fund, is the negotiability of the fees, so that larger retirement plans should be able to leverage their size for lower fees.

21. The Plan operates, in part, as an employee stock ownership plan, which enables L Brands employees to acquire an ownership interest in the company through units of the L Brands, Inc. Common Stock Fund. The fund operates as a unitized fund, meaning participant

accounts invest in units which represent a *pro rata* interest in the Plan's investment in L Brands stock and cash or cash equivalents, which are held in a trust fund.

22.     Well Fargo Institutional Retirement and Trust ("Wells Fargo"), which Defendants engaged, has been the recordkeeper for the Plan throughout the Class Period.  As the recordkeeper, Wells Fargo is responsible for maintaining records with respect to employees' accounts in the Plan, effecting participant Plan investment elections, and performing administrative functions such as processing loan and withdrawal requests.

23.     During the Class Period, Plan assets were held in trust by the primary custodian of the Plan, Wells Fargo Bank, N.A.  All investments and asset allocations are performed through this trust fund.

**B.     Defendants' Breaches of Fiduciary Duties**

24.     As discussed in detail below, Defendants have severely breached their fiduciary duties of prudence and/or loyalty to the Plan.  Plaintiff did not acquire actual knowledge regarding Defendants' breaches at issue here until shortly before this Complaint was filed.

### 1.     The Plan's Excessive Recordkeeping and Administrative Costs

25.     An obvious indicator of Defendants' breach of their fiduciary duties is the Plan's excessive recordkeeping and administrative costs.  The Plan pays these expenses out of Plan assets, with the funds taken directly from participant accounts.  The impact of such high fees on participant balances is aggravated by the effects of compounding, to the significant detriment of participants over time.  This effect is illustrated by the below chart, published by the SEC, showing the 20-year impact on a balance of $100,000 by fees of 25 basis points (0.25%), 50 basis points (0.50%), and 100 basis points (1.00%).



26.    According to one industry publication,[2] the average cost for recordkeeping and administration in 2017 for plans much smaller than the Plan (plans with 100 participants and $5 million in assets) was $35 per participant.[3]   As of December 31, 2019, the Plan had approximately $1.6 billion in assets and 33,761 participants.  Given its size, and resulting negotiating power, with prudent management and administration, the Plan should have unquestionably been able to obtain recordkeeping and administrative services for significantly lower than $35 per participant.

27.    Yet despite evidence that the Plan should have been paying considerably less, participants throughout the pertinent period have incurred the following annual fees, paid out of their account balances on a quarterly basis:

| Fee Description | Annual Fee Amount |
| --- | --- |
| Recordkeeping | $40.00 |
| Third party administration or audit services | $10.00 |

---

[2]The 401k Averages Book (18th ed.).

[3]Other courts have acknowledged that a plan with $3.4 billion in assets and 41,863 active participants should be paying $30 per participant (*Cassell v. Vanderbilt Univ.*, 285 F. Supp. 3d 1056, 1064 (M.D. Tenn. 2018)) and that the "market rate" of total administrative fees for "jumbo" plans, *i.e.*, those within the top 1%, should be $35 per participant (*Sacerdote v. New York Univ.*, No. 16-CV-6284 (KBF), 2017 WL 3701482, at *9 (S.D.N.Y. Aug. 25, 2017)).

| | |
|---|---|
| Investment advisory services | $6.00 |
| **Total Recordkeeping/Administrative Fee** | **$56.00** |

28.     Defendants clearly failed to scrutinize the going rates for the recordkeeping and administrative services the Plan received, and for which participants shoulder the financial responsibility to the detriment of their retirement savings.  As noted above, given its size and negotiating power, the Plan should have been able to negotiate a total recordkeeping and administrative fee of significantly lower than $35 per head.  Thus, Defendants clearly engaged in a shocking breach of fiduciary duty by allowing the Plan to pay at least 60% more than it should have paid for such services if they had engaged in any modestly prudent approach to ensuring that the Plan's recordkeeping and administrative fees were fair and reasonable

29.     As such, it is clear that Defendants either engaged in virtually no examination, comparison, or benchmarking of the recordkeeping/administrative fees of the Plan to those of other similarly sized defined contribution plans, or were complicit in paying grossly excessive fees.  Had Defendants conducted any examination, comparison, or benchmarking, Defendants would have known that the Plan was compensating Wells Fargo and the other service providers at levels inappropriate for its size and scale.  Plan participants bear this excessive fee burden and, accordingly, achieve considerably lower retirement savings since the excessive fees, particularly when compounded, have a damaging impact upon the returns attained by participant retirement savings.

30.     By failing to recognize that the Plan and its participants were being charged much higher fees than they should have been and/or failing to take effective remedial actions, Defendants breached their fiduciary duties to the Plan.

## 2. The Plan's Excessive Total Plan Cost

31.    In another obvious breach of their fiduciary duties, Defendants also failed to monitor the average expense ratios charged to similarly sized plans for investment management fees, which together with the Plan's high recordkeeping and administrative costs renders the Plan's Total Plan Cost ("TPC")[4] significantly above the market average for similarly sized and situated defined contribution plans.  Indeed, participants were offered an exceedingly expensive menu of investment options, clearly demonstrating that Defendants neglected to benchmark the cost of the Plan lineup or consider other ways in which to lessen the fee burden on participants during the pertinent period.  From 2014 through 2019, the Plan paid out investment management fees of 0.38%-0.46% of its total assets, a figure much higher than that of comparable plans. According to the most recent Brightscope/ICI study published in August 2020, the average TPC is 0.28%[5] for plans with over $1 billion in assets, with investment management fees comprising just one component of the TPC.  That the investment management fees for the Plan alone have been greater than the average TPC (inclusive of all plan fees) confirms the plain fact that Defendants failed to ensure that the Plan was paying reasonable fees and committed an apparent and significant breach of their fiduciary duties by failing to ensure that the Plan only paid reasonable investment management fees.  Coupled with the excessive $56 per-participant recordkeeping and administrative fees, the total cost to the Plan was even more expensive.

---

[4]TPC refers to the sum of all fees and expenses associated with the operation of a retirement plan; notably, the recordkeeping fees, any other administrative fees, and investment management fees. The TPC permits a straight "apples-to-apples" comparison of the total fees incurred by different plans, as service providers can and do manipulate price reporting by shifting or redirecting their fees to investment management expenses to minimize the billing for recordkeeping and other service components, and vice versa.

[5]This figure is for 2017. Given technological advances and market-based competitive pressures since 2017, the average TPC should be even lower today.

32.     The Plan's TPC during the relevant period ranges between 0.51% and 0.62% of net assets.  Indeed, at all times, the Plan's TPC was 0.23%-0.33% (23-33 basis points) higher[6] than that which Defendants should have reasonably accepted or negotiated for under any circumstances and caused the Plan to incur an overpayment of approximately $17.3 million in fees from 2014 to 2019.  Again, participants bear this excessive fee burden and, accordingly, Defendants' failure to recognize and remedy the Plan's excessive TPC has had a harmful impact on participants' ability to grow their retirement savings and represents a profound breach of fiduciary duty based upon any objective evaluation of Defendants' conduct.

### 3.     The Failure to Utilize the Least Expensive Share Class

33.     A further indication of Defendants' lack of a prudent evaluation process for investment-related fees is their failure to monitor the Plan's investment options to ensure that they were in the least expensive available share class.  There is no distinction whatsoever, *other than price*, between the share classes for the same investment option.  The share class used is typically, if not always, dependent on the negotiating leverage of the investor; in other words, large institutional investors, such as the Plan, have significant amounts of monies to invest such that mutual fund managers will agree to lower fees/offer cheaper share classes for access to those Plan assets.  Despite the negotiating leverage based on the size of the Plan, Defendants neglected to utilize the least expensive share class for the following fund:

| Share Class in Plan | 2019 AUM | Exp Ratio | Less Expensive Share Class | Exp Ratio |
|---|---|---|---|---|
| Artisan International Investor | $61.5m | 1.19% | Artisan International Institutional | 0.97% |

34.     As long as Defendants continue to refrain from offering the least expensive share class for each investment option in the Plan lineup, participants will suffer harm to their

---

[6]In 2014 and 2015, the Plan had approximately $915 million and $934 million in assets, respectively. Accordingly, for these years, Plaintiff calculates the excess TPC using the average TPC for plans with between $500 million and $1 billion in assets (0.38%) from the Brightscope study.

retirement savings through the payment of needless extra fees. By failing to recognize that the Plan and its participants were being paying higher investment management fees than they should have been and/or failing to take effective remedial actions, Defendants breached their fiduciary duties to the Plan.

## V.      ERISA'S FIDUCIARY STANDARDS

35.      ERISA imposes strict fiduciary duties of loyalty and prudence upon Defendants as fiduciaries of the Plan. 29 U.S.C. § 1104(a), states, in relevant part, as follows:

> [A] fiduciary shall discharge his duties with respect to a plan solely in the interest of the participants and beneficiaries and -
>
> (A)      for the exclusive purpose of
>
>> (i)      providing benefits to participants and their beneficiaries; and
>> (ii)     defraying reasonable expenses of administering the plan;
>
> [and]
>
> (B)      with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of like character and with like aims.

36.      Under 29 U.S.C. § 1103(c)(l), with certain exceptions not relevant here, the assets of a plan shall never inure to the benefit of any employer and shall be held for the exclusive purposes of providing benefits to participants in the plan and their beneficiaries and defraying reasonable expenses of administering the plan.

37.      Under ERISA, fiduciaries that exercise any authority or control over plan assets, including the selection of plan investments and service providers, must act prudently and solely in the interest of participants in a plan.

38.      ERISA's fiduciary duties are "the highest known to the law" and must be performed "with an eye single" to the interests of participants.

39.    ERISA also imposes explicit co-fiduciary liabilities on plan fiduciaries.  29 U.S.C.

§ 1105(a) provides a cause of action against a fiduciary for knowingly participating in a breach

by another fiduciary and knowingly failing to cure any breach of duty.  ERISA states, in relevant

part, as follows:

> In addition to any liability which he may have under any other
> provision of this part, a fiduciary with respect to a plan shall be liable
> for a breach of fiduciary responsibility of another fiduciary with
> respect to the same plan in the following circumstances:

> (1)    if he participates knowingly in, or knowingly
> undertakes to conceal, an act or omission of such other
> fiduciary, knowing such act or omission is a breach; or

> (2)    if, by his failure to comply with section 404(a)(l) in the
> administration of his specific responsibilities which
> give risk to his status as a fiduciary, he has enabled such
> other fiduciary to commit a breach; or

> (3)    if he has knowledge of a breach by such other fiduciary,
> unless he makes reasonable efforts under the
> circumstances to remedy the breach.

40.    29 U.S.C. § 1132(a)(2) authorizes a plan participant to bring a civil action to

enforce a breaching fiduciary's liability to the plan under 29 U.S.C. § 1109.  Section 1109(a)

provides, in relevant part:

> Any person who is a fiduciary with respect to a plan who breaches any of the
> responsibilities, obligations, or duties imposed upon fiduciaries by this
> subchapter shall be personally liable to make good to such plan any losses to
> the plan resulting from each such breach, and to restore to such plan any profits
> of such fiduciary which have been made through use of assets of the plan by the
> fiduciary, and shall be subject to such other equitable or remedial relief as the
> court may deem appropriate, including removal of such fiduciary.

## VI.    CLASS ALLEGATIONS

41.    This action is brought as a class action by Plaintiff on behalf of herself and the

following proposed class (the "Class"):

> All participants and beneficiaries in the L Brands, Inc. 401(k) Savings
> and Retirement Plan (the "Plan") at any time on or after November 23,
> 2014 to the present (the "Class Period"), including any beneficiary of a

deceased person who was a participant in the Plan at any time during the Class Period.

Excluded from the Class are Defendants and the Judge to whom this case is assigned or any other judicial officer having responsibility for this case who is a beneficiary.

42.     This action may be maintained as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure.

43.     **Numerosity**.  Plaintiff is informed and believes that there are at least thousands of Class members throughout the United States.  As a result, the members of the Class are so numerous that their individual joinder in this action is impracticable.

44.     **Commonality**.  There are numerous questions of fact and/or law that are common to Plaintiff and all the members of the Class, including, but not limited to the following:

(a)     Whether Defendants failed and continue to fail to discharge their duties with respect to the Plan solely in the interest of the Plan's participants for the exclusive purpose of providing benefits to participants and their beneficiaries;

(b)     Whether Defendants breached their fiduciary duties under ERISA by failing to defray the reasonable expenses of administering the Plan; and

(c)     Whether and what form of relief should be afforded to Plaintiff and the Class.

45.     **Typicality**.  Plaintiff, who is a member of the Class, has claims that are typical of all of the members of the Class.  Plaintiff's claims and all of the Class members' claims arise out of the same uniform course of conduct by Defendants and arise under the same legal theories that are applicable as to all other members of the Class.

46.     **Adequacy of Representation**.  Plaintiff will fairly and adequately represent the interests of the members of the Class.  Plaintiff has no conflicts of interest with or interests that are any different from the other members of the Class.  Plaintiff has retained competent counsel experienced in class action and other complex litigation, including class actions under ERISA.

47.    **Potential Risks and Effects of Separate Actions**.  The prosecution of separate actions by or against individual Class members would create a risk of: (A) inconsistent or varying adjudications with respect to individual Class members that would establish incompatible standards of conduct for the party opposing the Class; or (B) adjudications with respect to individual Class members that, as a practical matter, would be dispositive of the interests of the other members not parties to the individual adjudications or would substantially impair or impede their ability to protect their interests.

48.    **Predominance**.  Common questions of law and fact predominate over questions affecting only individual Class members, and the Court, as well as the parties, will spend the vast majority of their time working to resolve these common issues.  Indeed, virtually the only individual issues of significance will be the exact amount of damages incurred by each Class member, the calculation of which will ultimately be a ministerial function and which does not bar Class certification.

49.    **Superiority**.  A class action is superior to all other feasible alternatives for the resolution of this matter.  The vast majority, if not all, of the Class members are unaware of Defendants' breaches of fiduciary duty and prohibited transactions such that they will never bring suit individually.  Furthermore, even if they were aware of the claims they have against Defendants, the claims of virtually all Class members would be too small to economically justify individual litigation.  Finally, individual litigation of multiple cases would be highly inefficient, a gross waste of the resources of the courts and of the parties, and potentially could lead to inconsistent results that would be contrary to the interests of justice.

50.    **Manageability**.  This case is well-suited for treatment as a class action and easily can be managed as a class action since evidence of both liability and damages can be adduced, and proof of liability and damages can be presented, on a Class-wide basis, while the allocation and distribution of damages to Class members would be essentially a ministerial function.

51.     Defendants have acted on grounds generally applicable to the Class by uniformly subjecting them to the breaches of fiduciary duty described above. Accordingly, injunctive relief, as well as legal and/or equitable monetary relief (such as disgorgement and/or restitution), along with corresponding declaratory relief, are appropriate with respect to the Class as a whole.

52.     Plaintiff's counsel will fairly and adequately represent the interests of the Class and are best able to represent the interests of the Class under Rule 23(g) of the Federal Rules of Civil Procedure. Moreover, treating this case as a class action is superior to proceeding on an individual basis and there will be no difficulty in managing this case as a class action.

53.     Therefore, this action should be certified as a class action under Rules 23(a) and 23(b)(1) and/or 23(b)(3).

## COUNT I
### (For Breach of Fiduciary Duty)

54.     Plaintiff incorporates by reference the allegations in the previous paragraphs of this Complaint as if fully set forth herein.

55.     Defendants' conduct, as set forth above, violates their fiduciary duties under ERISA § 404(a)(1)(A), (B) and (D), 29 U.S.C. § 1104(a)(1)(A), (B) and (D), in that Defendants failed and continue to fail to discharge their duties with respect to the Plan solely in the interest of the Plan's participants and beneficiaries and (a) for the exclusive purpose of (i) providing benefits to participants and their beneficiaries; and (ii) defraying reasonable expenses of administering the Plan with (b) the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims, and (c) by failing to act in accordance with the documents and instruments governing the Plan. In addition, as set forth

above, Defendants violated their respective fiduciary duties under ERISA to monitor other fiduciaries of the Plan in the performance of their duties.

56.    To the extent that any of the Defendants did not directly commit any of the foregoing breaches of fiduciary duty, at the very minimum, each such Defendant is liable under 29 U.S.C. § 1105(a) because he, she, they or it was a co-fiduciary and knowingly participated in (or concealed) a breach by another fiduciary, enabled another fiduciary to commit breaches of fiduciary duty in the administration of his, her, their or its specific responsibilities giving rise to his, her, their or its fiduciary status and/or knowingly failing to cure a breach of fiduciary duty by another fiduciary and/or failed to take reasonable efforts to remedy the breach.

57.    As a direct result of Defendants' breaches of fiduciary duties, the Plan has suffered losses and damages.

58.    Pursuant to ERISA § 409, 29 U.S.C. § 1109, and ERISA § 502, 29 U.S.C. § 1132, Defendants are liable to restore to the Plan the losses that have been suffered as a direct result of Defendants' breaches of fiduciary duty and are liable for damages and any other available equitable or remedial relief, including prospective injunctive and declaratory relief, and attorneys' fees, costs and other recoverable expenses of litigation.

## COUNT II
**(Failure to Monitor Fiduciaries and Co-Fiduciary Breaches)**

59.    Plaintiff incorporates by reference the allegations in the previous paragraphs of this Complaint as if fully set forth herein.

60.    L Brands is responsible for appointing, overseeing, and removing members of the Administrative Committee.

61.    In light of its appointment and supervisory authority, L Brands had a fiduciary responsibility to monitor the performance of the Administrative Committee and its members.

62.    A monitoring fiduciary must ensure that the monitored fiduciaries are performing

their fiduciary obligations, including those with respect to the investment and holding of Plan assets, and must take prompt and effective action to protect the Plan and participants when they are not.

63.     To the extent that fiduciary monitoring responsibilities of L Brands was delegated, its monitoring duty included an obligation to ensure that any delegated tasks were being performed prudently and loyally.

64.     L Brands breached its fiduciary monitoring duties by, among other things:

(a)   Failing to monitor and evaluate the performance of its appointees or have a system in place for doing so, standing idly by as the Plan suffered enormous losses as a result of the appointees' imprudent actions and omissions with respect to the Plan;

(b)   Failing to monitor its appointees' fiduciary processes, which would have alerted a prudent fiduciary to the breaches of fiduciary duties described herein, in clear violation of ERISA; and

(c)   Failing to remove appointees whose performances were inadequate in that they continued to maintain imprudent, excessively costly, and poorly performing investments within the Plan, all to the detriment of the Plan and its participants' retirement savings.

65.     As a consequence of these breaches of the fiduciary duty to monitor, the Plan suffered substantial losses.  Had L Brands discharged its fiduciary monitoring duties prudently as described above, the losses suffered by the Plan would have been minimized and/or avoided. Therefore, as a direct result of the breaches of fiduciary duties alleged herein, the Plan and its participants have lost millions of dollars of retirement savings.

66.     L Brands is liable under 29 U.S.C. § 1109(a) to make good to the Plan any losses to the Plan resulting from the breaches of fiduciary duties alleged in this Count; to restore to the Plan any profits made through use of Plan assets; and is subject to other equitable or remedial relief as appropriate.

67.     Each of the Defendants also knowingly participated in the breaches of the other Defendants, knowing that such acts were a breach; enabled the other Defendants to commit a breach by failing to lawfully discharge their own fiduciary duties; and knew of the breaches by the other Defendants and failed to make any reasonable effort under the circumstances to remedy the breaches.  Defendants, thus, are liable for the losses caused by the breaches of their co-fiduciaries under 29 U.S.C. § 1105(a).

<u>COUNT III</u>
**(In the Alternative, Liability for Participation In Breach of Fiduciary Duty)**

68.     Plaintiff incorporates by reference the allegations in the previous paragraphs of this Complaint as if fully set forth herein.

69.     In the alternative, to the extent that any of the Defendants are not deemed a fiduciary or co-fiduciary under ERISA, each such Defendant should be enjoined or otherwise subject to equitable relief as a non-fiduciary from further participating in a breach of trust.

70.     To the extent any of the Defendants are not deemed to be fiduciaries and/or are not deemed to be acting as fiduciaries for any and all applicable purposes, any such Defendants are liable for the conduct at issue here, since all Defendants possessed the requisite knowledge and information to avoid the fiduciary breaches at issue here and knowingly participated in breaches of fiduciary duty by permitting the Plan to offer a menu of poor and expensive investment options that cannot be justified in light of the size of the Plan and the other expenses of the Plan.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff, on behalf of herself, the Class and the Plan, demands judgment against Defendants, for the following relief:

(a)     Declaratory and injunctive relief pursuant to ERISA § 502, 29 U.S.C. § 1132, as detailed above;

(b)     Equitable, legal or remedial relief to return all losses to the Plan and/or for

restitution and/or damages as set forth above, plus all other equitable or remedial relief as

the Court may deem appropriate pursuant to ERISA §§ 409 and 502, 29 U.S.C. §§ 1109

and 1132;

(c)     Pre-judgment and post-judgment interest at the maximum permissible rates,

whether at law or in equity;

(d)     Attorneys' fees, costs and other recoverable expenses of litigation; and

(e)     Such further and additional relief to which the Plan may be justly entitled and the

Court deems appropriate and just under all of the circumstances.

## JURY DEMAND

Plaintiff demands a jury trial with respect to all claims so triable.

## NOTICE PURSUANT TO ERISA § 502(h)

To ensure compliance with the requirements of ERISA § 502(h), 29 U.S.C. § 1132(h),

the undersigned hereby affirms that, on this date, a true and correct copy of this Complaint was

served upon the Secretary of Labor and the Secretary of the Treasury by certified mail, return

receipt requested.


DATED: November 23, 2020                    GOLDENBERG SCHNEIDER, LPA

                                            /s/ Jeffrey S. Goldenberg
                                            Jeffrey S. Goldenberg (0063771)
                                            Todd B. Naylor (0068388)
                                            4445 Lake Forest Drive, Suite 490
                                            Cincinnati, OH 45242
                                            Telephone: (513) 345-8291
                                            Facsimile: (513) 345-8294
                                            Email: jgoldenberg@gs-legal.com
                                                   tnaylor@gs-legal.com

Ronald S. Kravitz*
Kolin C. Tang*
Shepherd Finkelman Miller & Shah, LLP
201 Filbert Street, Suite 201
San Francisco, CA 94133
Telephone: (415) 429-5272
Facsimile: (866) 300-7367
Email: rkravitz@sfmslaw.com
       ktang@sfmslaw.com

James E. Miller*
Laurie Rubinow*
Shepherd Finkelman Miller & Shah, LLP
65 Main Street
Chester, CT 06412
Telephone: (860) 526-1100
Facsimile: (866) 300-7367
Email: jmiller@sfmslaw.com
       lrubinow@sfmslaw.com

James C. Shah*
Michael P. Ols*
Alec J. Berin*
Shepherd Finkelman Miller & Shah, LLP
1845 Walnut Street, Suite 806
Philadelphia, PA 19103
Telephone: (610) 891-9880
Facsimile: (866) 300-7367
Email: jshah@sfmslaw.com
       mols@sfmslaw.com
       aberin@sfmslaw.com

*Pro Hac Vice Application forthcoming*

*Attorneys for Plaintiff, the Plan
and the Proposed Class*