**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION**

|  |  |
|---|---|
| DONNA ALLISON,<br>Individually and as a representative of a<br>class of similarly situated persons, on<br>behalf of the L BRANDS, INC. 401(K)<br>SAVINGS AND RETIREMENT PLAN,<br><br>      Plaintiff,<br>  v.<br><br>L BRANDS, INC., L BRANDS SERVICE<br>COMPANY, LLC, THE RETIREMENT PLAN<br>COMMITTEE OF THE L BRANDS, INC.<br>401(K) SAVINGS AND RETIREMENT PLAN;<br>and DOES No. 1–10,<br>Whose Names Are Currently Unknown,<br><br>      Defendants. | Civil Action<br>No: 2:20-cv-06018-EAS-CMV<br><br><br><br><br><br><br><br><br><br><br><br><br><br>August 11, 2022 |

**PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORT OF THE UNOPPOSED
MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT**

## TABLE OF CONTENTS

Table of Authorities .................................................................................................. ii

INTRODUCTION ..................................................................................................... 1

RELEVANT BACKGROUND .................................................................................. 2

STANDARD OF REVIEW ........................................................................................ 4

ARGUMENT ............................................................................................................. 6

I.       CERTIFICATION OF A SETTLEMENT CLASS IS APPROPRIATE .......................... 6

      A.     The Settlement Class Satisfies Rule 23(a) ............................................ 6

             i.     Numerosity ................................................................. 6

             ii.    Commonality ............................................................. 7

             iii.   Typicality .................................................................. 9

             iv.   Adequacy .................................................................. 11

      B.     The Settlement Class Satisfies Rule 23(b)(1) ..................................... 12

      C.     Miller Shah Should Be Appointed as Class Counsel ........................... 13

II.      THE SETTLEMENT, NOTICE PLAN, AND PLAN OF ALLOCATION WARRANT PRELIMINARY APPROVAL .................................................... 14

      A.     The Settlement Should Be Preliminarily Approved ............................ 15

      B.     The Notice Plan Should Be Preliminarily Approved ........................... 17

      C.     The Plan of Allocation Should Be Preliminarily Approved ................ 18

CONCLUSION ......................................................................................................... 18

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

*Amchem Prods., Inc. v. Windsor*,
521 U.S. 591 (1997) ........................................................................................... 5, 6, 12

*Bailey v. Verso Corp.*,
2021 WL 5815727 (S.D. Ohio Dec. 6, 2021) ............................................................. 12

*Bailey v. Verso Corp.*,
337 F.R.D. 500 (S.D. Ohio 2021) ............................................................... 12, 15, 16

*Beach v. JPMorgan Chase Bank, N.A.*,
2019 WL 2428631 (S.D.N.Y. June 11, 2019) ............................................................ 11

*Cross v. Nat'l Trust Life Ins. Co.*,
553 F.2d 1026 (6th Cir. 1977) .................................................................................... 11

*Cunningham v. Cornell Univ.*,
2019 WL 275827 (S.D.N.Y. Jan. 22, 2019) ................................................................. 8

*Dudenhoeffer v. Fifth Third Bancorp*,
2016 WL 9343955 (S.D. Ohio July 11, 2016) .............................................................. 6

*Eisen v. Carlisle & Jacquelin*,
417 U.S. 156 (1974) .................................................................................................... 17

*Fenley v. Wood Grp. Mustang, Inc.*,
325 F.R.D. 232 (S.D. Ohio 2018) ................................................................................. 7

*Franks v. Kroger Co.*,
649 F.2d 1216 (6th Cir. 1981) .................................................................................... 14

*General Telephone Co. of Southwest v. Falcon*,
457 U.S. 147 (1982) .................................................................................................... 10

*In re Am. Medical Sys.*,
75 F.3d 1069 (6th Cir. 1996) ........................................................................................ 7

*In re Broadwing, Inc. ERISA Litig.*,
252 F.R.D. 369 (S.D. Ohio 2006) ........................................................................ passim

*In re Cardizem CD Antitrust Litig.*,
218 F.R.D. 508 (E.D. Mich. 2003) ............................................................................... 6

*In re Dun & Bradstreet Credit Servs. Customer Litig.*,
  130 F.R.D. 366, (S.D. Ohio 1990) ........................................................................ 5

*In re Inter-Op Hip Prosthesis Liability Litig.*,
  204 F.R.D. 330 (N.D. Ohio 2001)..................................................................... 10, 14

*In re Nationwide Fin. Servs. Litig.*,
  2009 WL 8747486 (S.D. Ohio Aug. 19, 2009)..................................... 7, 8, 12, 15, 16

*In re Packaged Ice Antitrust Litig.*,
  2011 WL 717519 (E.D. Mich. Feb. 22, 2011) .................................................... 15

*In re Schering Plough Corp. ERISA Litig.*,
  589 F.3d 585 (3d Cir. 2009)................................................................................ 6

*In re Whirlpool Corp. Front-Loading Washer Prods. Liab. Litig.*,
  722 F.3d 838 (6th Cir. 2013) ........................................................................... 4, 7

*Int'l Union, United Auto, Aerospace, and Implement Workers of Am. v. General Motors Corp.*,
  497 F.3d 615 (6th Cir. 2007)........................................................................... 5, 16

*Jackson v. TruBridge, Inc.*,
  2017 WL 2989727 (N.D. Ohio Jan. 26, 2017)...................................................... 4, 5

*Johnson v. Midwest Logistics Sys., Ltd.*,
  2013 WL 2295880 (S.D. Ohio May 24, 2013) ..................................................... 17

*Karpik v. Huntington Bancshares Inc.*,
  2021 WL 757123 (S.D. Ohio Feb. 8, 2021)................................................. passim

*Kennedy v. United Healthcare of Ohio, Inc.*,
  206 F.R.D. 191 (S.D. Ohio 2002) ....................................................................... 14

*Leber v. Citigroup 401(k) Plan Inv. Comm.*,
  323 F.R.D. 145 (S.D.N.Y. 2017) ........................................................................ 9

*Mass Mut. Life Ins. Co. v. Russell*,
  473 U.S. 134 (1985)......................................................................................... 11

*Moreno v. Deutsche Bank Americas Holding Corp.*,
  2017 WL 3868803 (S.D.N.Y. Sept. 5, 2017)......................................................... 9

*Motter v. O'Brien*,
  2014 WL 12892732 (S.D. Ohio June 12, 2014) ..................................................... 5

*Mullane v. Central Hanover Bank and Trust Co.*,
  339 U.S. 306 (1950)........................................................................................ 17

*Ortiz v. Fibreboard Corp.*,
  527 U.S. 815 (1999)........................................................................................ 13

*Patrick v. AK Steel Corp.*,
   2013 WL 12228406 (S.D. Ohio July 29, 2013) .................................................... 5

*Rikos v. Proctor & Gamble Co.*,
   2018 WL 2009681 (S.D. Ohio Apr. 30, 2018) .................................................. 9, 11

*Sacerdote v. New York Univ.*,
   2018 WL 840364 (S.D.N.Y. Feb. 13, 2018) ..................................................... 9, 10

*Senter v. Gen Motors Corp.*,
   532 F.2d 511 (6th Cir. 1976) ............................................................................. 11

*Shirk v. Fifth Third Bancorp.*,
   2008 WL 4425535 (S.D. Ohio Sept. 30, 2008) .......................................... passim

*Sprague v. Gen. Motors Corp.*,
   133 F.3d 388 (6th Cir. 1998) .............................................................................. 7, 9

*Surowitz v. Hilton Hotels Corp.*,
   383 U.S. 363 (1966) ............................................................................................. 12

*Tenn. Ass'n of Health Maint. Orgs., Inc. v. Grier*,
   262 F.3d 559 (6th Cir. 2001) ............................................................................... 14

*Turnage v. Norfolk S. Corp.*,
   307 Fed. App'x 918 (6th Cir. 2009) ...................................................................... 7

*Wal- Mart Stores, Inc. v. Dukes*,
   564 U.S. 338 (2011) ....................................................................................... 7, 8, 9

## **Statutes**

29 U.S.C. § 1104 ........................................................................................................ 8

29 U.S.C. § 1104(a)(1) ............................................................................................... 8

29 U.S.C. § 1109 ........................................................................................................ 8

29 U.S.C. § 1109(a) ............................................................................................... 8, 11

29 U.S.C. §1132(a)(2) ........................................................................................... 8, 11

## **Rules**

Fed. R. Civ. P.  23 .............................................................................................. passim

Fed. R. Civ. P. 23(a) ....................................................................................... 5, 6, 7, 12

Fed. R. Civ. P. 23(a)(1) .............................................................................................. 6

Fed. R. Civ. P. 23(a)(2) .............................................................................................. 7

Fed. R. Civ. P. 23(a)(3) ............................................................................................. 9, 10

Fed. R. Civ. P. 23(a)(4) ................................................................................................. 11

Fed. R. Civ. P. 23(b) ............................................................................................ 5, 12, 13

Fed. R. Civ. P. 23(b)(1) ....................................................................................... 6, 12, 13

Fed. R. Civ. P. 23(b)(1)(B) .......................................................................................... 13

Fed. R. Civ. P. 23(c)(2) ................................................................................................. 17

Fed. R. Civ. P. 23(e) ......................................................................................... 5, 17, 18

Fed. R. Civ. P. 23(g)(1)(A) .......................................................................................... 13

Plaintiff, Donna Allison, on behalf of the proposed Settlement Class and the L Brands, Inc. 401(k) Savings and Retirement Plan (the "Plan"), respectfully submits this Memorandum of Law in Support of her Unopposed Motion for Preliminary Approval of Class Action Settlement (the "Motion"), requesting the Court issue an Order that: (1) preliminarily approves the Settlement Agreement dated August 11, 2022 with Defendants, L Brands, Inc. ("L Brands"), L Brands Service Company LLC, and the Retirement Plan Committee of the L Brands, Inc. 401(k) Savings and Retirement Plan (collectively, "Defendants," and with Plaintiff, the "Parties");[1] (2) preliminarily certifies the proposed Settlement Class; (3) approves the proposed notice plan ("Notice Plan") in the Settlement Agreement and proposed Preliminary Approval Order; and (4) sets a final approval hearing on a date convenient for the Court at least one hundred twenty (120) calendar days after the entry of the proposed Preliminary Approval Order.

## INTRODUCTION

The Parties have agreed to a proposed settlement ("Settlement") of this putative class action lawsuit (the "Action"), brought under the Employee Retirement Income Security Act of 1974 ("ERISA"), for total relief of $2,750,000.00, as well as certain non-monetary terms, which will provide a substantial recovery to members of the Settlement Class.[2]  In light of the substantial relief provided by the Settlement and the risks of continued litigation, Plaintiff and Class Counsel believe the Settlement is fair, reasonable, adequate, and in the best interests of the

---

[1] The Settlement Agreement and its exhibits are attached to the accompanying Declaration of Alec Berin.  Terms not defined herein shall have the same meaning as in the Settlement Agreement.

[2] "Settlement Class" means all participants and beneficiaries of the Plan, at any time during the Class Period, including any beneficiary of a deceased person who was a participant in the Plan at any time during the Class Period, and, in the case of a person subject to a QDRO who was a participant in the Plan at any time during the Class Period, any Alternate Payees.  The Class shall exclude all Defendants, including members of the Administrative Committee during the Class Period.  *See* Settlement Agreement § 1.10.

Settlement Class.

Plaintiff and Class Counsel have vigorously pursued relief on behalf of the Plan.  The Parties agreed to the Settlement after extensive motion practice, discovery, and arm's-length negotiations by experienced counsel, including at a private mediation session with an experienced mediator.   Resolving the Action at this juncture allows the Parties to avoid continued and costly litigation that would deplete resources which could otherwise be used for the resolution of the Action, and which could result in a recovery less than that provided by the Settlement, or no recovery at all.

As set forth below, all prerequisites for preliminary approval of the Settlement and certification of the Settlement Class are satisfied.   As such, Plaintiff's Motion should be granted, and notice should be provided to the Participants in accordance with the Notice Plan.

## RELEVANT BACKGROUND

Plaintiff alleges that Defendants are fiduciaries of the Plan and breached duties owed to the Plan and its participants and beneficiaries by: (1) causing the Plan to pay unreasonable investment management fees; and (2) causing the Plan to pay unreasonable recordkeeping and administrative fees.  *See* Compl., ECF No. 1, ¶¶ 24–34.  Plaintiff's allegations are set forth in full in the Complaint, which Plaintiff filed on November 23, 2020.  Defendants moved to dismiss on February 12, 2021 (ECF Nos. 7, 8).  While Defendants' motion to dismiss was pending, the parties engaged in meaningful initial discovery efforts, including the production and review of more than 7,000 pages of documents related to Plan administration and Defendants' alleged conduct.  *See* Berin Decl. ¶ 6.  The Court denied Defendants' motion to dismiss on September 16, 2021, (ECF No. 39) and the Court entered a Preliminary Pretrial Order on October 18, 2021 (ECF No. 45) that included deadlines for the Parties to exchange settlement communications and

reflected the Parties' agreement to make a good faith effort to resolve the case by settlement. The Parties subsequently agreed to proceed with private mediation.

In preparation for mediation, the Parties communicated their positions regarding the merits of Plaintiff's claims and Defendants' defenses, and the potential associated damages. The Parties held a mediation session with David Geronemus, Esquire, of JAMS, a well-respected, neutral mediator who is experienced in mediating claims of the kind at issue in the Action. The Parties exchanged briefs and follow-up information prior to and during the mediation and reached an agreement in principle to resolve the Action on May 3, 2022. The parties worked to document the same in the Settlement Agreement.

The Settlement provides that, in exchange for dismissal of the Action and a release of claims, Defendants will pay the aggregate amount of $2,750,000.00 into a Qualified Settlement Fund to be allocated to Participants, Former Participants, Beneficiaries, and Alternate Payees of the Plan pursuant to the Plan of Allocation. *See* Settlement Agreement, §§ 1.37, 3.2; Berin Decl., Ex. C. The Settlement Agreement and the proposed Preliminary Approval Order set forth the Notice Plan and describe Plaintiff's anticipated requests for payment of attorneys' fees and litigation expenses to Class Counsel and for a case contribution award, all of which are subject to the Court's approval. *See* Settlement Agreement, §§ 2.8, 7.1, 7.2; Berin Decl., Ex. D. In addition, the Settlement Agreement provides for the approval of the Settlement by an Independent Fiduciary. *See* Settlement Agreement, § 2.6.

The Parties respectfully request that the Court schedule a Fairness Hearing, at or after which the Court will be asked to determine whether the Settlement is fair, reasonable, and adequate, and merits final approval. Plaintiff proposes the following schedule associated with the Notice Plan and Fairness Hearing:

| Event | Reference to Preliminary Approval Order | Proposed Deadline |
|---|---|---|
| Preliminary approval hearing | | If the Court deems necessary, on a date convenient for the Court within 45 days of the preliminary approval filing |
| Settlement Administrator to set up settlement website and toll-free number | ¶ 8 | Within 45 days of entry of Preliminary Approval Order |
| Send Settlement Notice and Former Participant Claim Form to Class Members | ¶ 8 | Within 45 days of entry of Preliminary Approval Order |
| Final approval papers and fee request | ¶ 9 | 45 days before Fairness Hearing |
| Independent Fiduciary report | Settlement Agreement ¶ 2.6 | Not later than 21 days before the Fairness Hearing |
| Deadline for filing of objections | ¶ 11 | Not later than 30 days before the Fairness Hearing |
| Deadline for Parties to respond to objections or file any additional papers in support of Settlement | ¶ 11 | Not later than 7 days before Fairness Hearing |
| Fairness Hearing | ¶ 6 | On a date convenient for the Court no sooner than 120 days after the date the motion for entry of the Preliminary Approval Order is filed |

## STANDARD OF REVIEW

Under Federal Rule of Civil Procedure ("Rule") 23, when the Court is presented with a proposed settlement, it must determine whether the proposed settlement class satisfies the requirements for class certification under Rule 23. *See Jackson v. TruBridge, Inc.*, No. 5:16-CV-00223, 2017 WL 2989727, at *2 (N.D. Ohio Jan. 26, 2017) (citing *In re Whirlpool Corp. Front-Loading Washer Prods. Liab. Litig.*, 722 F.3d 838, 850 (6th Cir. 2013)). Class certification

under Rule 23 has two primary components: a proposed class must meet the four requirements of Rule 23(a) and the requirements of at least one subsection of Rule 23(b). *See Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 613–14 (1997); Fed. R. Civ. P. 23.

Preliminary approval of a proposed settlement is based upon the court's "familiarity with the issues and evidence, as well as the arm[']s-length nature of the negotiations prior to the proposed settlement, ensuring that the proposed settlement is not illegal or collusive." *In re Dun & Bradstreet Credit Servs. Customer Litig.*, 130 F.R.D. 366, 370, (S.D. Ohio 1990). At the preliminary approval stage, the Court must evaluate the fairness, reasonableness, and adequacy of the settlement terms. *See Jackson*, 2017 WL 2989727, at \*2 (citing Fed. R. Civ. P. 23(e)). This Court approaches that analysis with the understanding that "the law favors settlement, particularly in class actions and other complex cases where substantial judicial resources can be conserved by avoiding formal litigation." *Motter v. O'Brien*, No. 2:13-CV-216, 2014 WL 12892732, at \*1 (S.D. Ohio June 12, 2014) (citing *Int'l Union, United Auto, Aerospace, and Implement Workers of Am. v. General Motors Corp.*, 497 F.3d 615, 632 (6th Cir. 2007) (recognizing "federal policy favoring settlement of class actions")).[3] Accordingly, at the preliminary approval stage, the Court need only find that the "settlement agreement is within the range of reasonableness[.]" *Patrick v. AK Steel Corp.*, No. 1:05-CV-681, 2013 WL 12228406, at \*1 (S.D. Ohio July 29, 2013).

---

[3] At final approval, the Court will evaluate the Settlement in light of certain factors identified by the Sixth Circuit: "1. Plaintiffs' likelihood of ultimate success on the merits balanced against the amount and form of relief offered in settlement; 2. The complexity, expense and likely duration of the litigation; 3. The stage of the proceedings and the amount of discovery completed; 4. The judgment of experienced trial counsel; 5. The nature of the negotiations; 6. The objections raised by the class members; and 7. The public interest." *In re Broadwing, Inc. ERISA Litig.*, 252 F.R.D. 369, 372 (S.D. Ohio 2006). While the Court need not reach final determinations regarding these factors at this juncture, even a preliminary review of these factors reveals that the settlement warrants approval.

## ARGUMENT

### I.    CERTIFICATION OF A SETTLEMENT CLASS IS APPROPRIATE

While ERISA representative actions are ideally suited for class action treatment, when "[c]onfronted with a request for settlement-only class certification, a district court need not inquire whether the case, if tried, would present intractable management problems . . . for the proposal is that there be no trial."  *Amchem*, 521 U.S. at 620; *see also In re Cardizem CD Antitrust Litig.*, 218 F.R.D. 508, 517 (E.D. Mich. 2003) (same).  Even setting aside the less stringent inquiry relevant here, this District has recognized that "cases such as this, which involve allegations of fiduciary breaches to a trust or plan, are precisely the type of cases that are encompassed by" Rule 23(b)(1).  *Karpik v. Huntington Bancshares Inc.*, No. 2:17-cv-1153, 2021 WL 757123, at *11 (S.D. Ohio Feb. 8, 2021); *see also Dudenhoeffer v. Fifth Third Bancorp*, No. 1:08-cv-538-SSB, 2016 WL 9343955, at *2 (S.D. Ohio July 11, 2016) (calling ERISA actions a "paradigmatic example" of a case appropriate for certification as a Rule 23(b)(1) class; *In re Schering Plough Corp. ERISA Litig.*, 589 F.3d 585, 604 (3d Cir. 2009) (same).

### A.    The Settlement Class Satisfies Rule 23(a)

The requirements of Rule 23(a) are commonly referred to as numerosity, commonality, typicality, and adequacy of representation.  *See Amchem*, 521 U.S. at 613.  Plaintiff and the proposed Class satisfy each of the Rule 23(a) prerequisites.

#### i.    Numerosity

The numerosity requirement of Rule 23 requires that a putative class must be "so numerous that joinder of all members is impracticable."  Fed. R. Civ. P. 23(a)(1).  While the numerosity inquiry depends on the facts of the specific case, *Broadwing*, 252 F.R.D. at 376, practicability of joinder generally depends on the "ease of identifying members and determining addresses, ease of service on members if joined, and geographical dispersion among other

6

things." *Turnage v. Norfolk S. Corp.*, 307 Fed. App'x 918, 921 (6th Cir. 2009). Importantly, a plaintiff does not need to prove that it is impossible to join all proposed class members, but merely that "joinder would be difficult and inconvenient." *Fenley v. Wood Grp. Mustang, Inc.*, 325 F.R.D. 232, 249 (S.D. Ohio 2018) (internal quotations omitted). Courts in this circuit recognize there is "no strict numerical test for determining impracticability of joinder," but when a class is substantially large, "the impracticability requirement is usually satisfied by the numbers alone." *In re Nationwide Fin. Servs. Litig.*, No. 2:08-CV-00249, 2009 WL 8747486, at *9 (S.D. Ohio Aug. 19, 2009) (citing *In re Am. Medical Sys.*, 75 F.3d 1069, 1079 (6th Cir. 1996)). In fact, numerosity "is presumed when there are at least 40 class members," far fewer than the Settlement Class here. *Karpik*, 2021 WL 757123, at *10. Thus, the proposed Class easily meets Rule 23(a)'s numerosity requirement.

### ii.  Commonality

The commonality prerequisite of Rule 23 requires "questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). Commonality involves the ability of a class-wide proceeding to generate "common answers that are likely to drive resolution of the lawsuit." *Whirlpool*, 722 F.3d at 852. Although Rule 23 refers to "questions" in the plural, the Sixth Circuit requires only one question common to the class. *Fenley*, 325 F.R.D. at 250 (citing *Sprague v. Gen. Motors Corp.*, 133 F.3d 388, 397 (6th Cir. 1998) (en banc)). Accordingly, the commonality requirement is met when there is at least one common question, the determination of which "will resolve an issue that is central to the validity of each one of the claims in one stroke." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011).

Courts in this Circuit find the commonality prerequisite satisfied where "a plaintiff alleges a common course of conduct arising out of a single set of operative facts[.]" *Nationwide*, 2009 WL 8747486, at *9. Plaintiff alleges Defendants breached fiduciary duties owed to the

Plan under ERISA § 404, 29 U.S.C. § 1104, and brings the Action in a representative capacity under ERISA §§ 409 and 502(a)(2), 29 U.S.C. §§ 1109, 1132(a)(2). Thus, Plaintiff's Plan-wide claims involve legal and factual questions that inherently affect all participants and beneficiaries in the Plan. Indeed, Plaintiff "bring[s] suit on behalf of participants in the Plan [], the centralized administration of which is common to all class members." *Cunningham v. Cornell Univ.*, 2019 WL 275827, at *5 (S.D.N.Y. Jan. 22, 2019). "Because the fiduciary duties are owed to the [Plan] . . . common questions of law and fact are central to the case." *Id.*; *see* 29 U.S.C. § 1104(a)(1) ("a fiduciary shall discharge his duties with respect to a *plan*") (emphasis added).

The core questions in this Action are common to all Plan participants and include: (i) whether Defendants are fiduciaries of the Plan; (ii) whether Defendants breached their fiduciary duties by causing the Plan to incur excessive recordkeeping and administrative fees; (iii) whether the Plan suffered resulting losses; (iv) the proper manner in which to calculate the Plan's losses; and (v) what equitable relief, if any, is appropriate in light of these alleged breaches. *See Shirk v. Fifth Third Bancorp.*, No. 05-CV-049, 2008 WL 4425535, at *2 (S.D. Ohio Sept. 30, 2008) (finding that similar questions in an ERISA case satisfied the commonality requirement); *see also Nationwide*, 2009 WL 874786, at *9 ("In general, determining Defendants' liability for alleged violations of fiduciary duties is common to all Class members").

While a single common question is sufficient to meet this standard, the common questions here are numerous. *See Wal-Mart,* 564 U.S. at 359. Since the critical issues in this litigation involve the acts and omissions of Defendants, they are "common to all Class Members because a breach of fiduciary duty affects all participants and beneficiaries." *Broadwing*, 252 F.R.D. at 377. The evidence required to answer the central contentions in the Action exists at the Plan-level and, consequently, is common to all the Plan's participants. If the evidence shows

that Defendants are fiduciaries and breached their alleged fiduciary duties, "it would not only generate answers applicable to all class members, but would also address the heart of the claims at issue in this litigation." *Leber v. Citigroup 401(k) Plan Inv. Comm.*, 323 F.R.D. 145, 160 (S.D.N.Y. 2017). These answers do not depend on the particular circumstances of any individual participant because, in ERISA fiduciary breach actions, "liability is determined based on Defendants' not Plaintiff['s] decisions." *Moreno v. Deutsche Bank Americas Holding Corp.*, No. 15 CIV. 9936 (LGS), 2017 WL 3868803, at *5 (S.D.N.Y. Sept. 5, 2017). The questions of law and fact in the Action are, by their nature, common to each member of the proposed Class, as the central allegations concern Defendants' administration of the Plan and Defendants' duties ran to the Plan. *See Sacerdote v. New York Univ.*, 2018 WL 840364, at *3 (S.D.N.Y. Feb. 13, 2018). Since the central allegations here concern Defendants' administration of the Plan, common questions pervade the Action.

      **iii.**        **Typicality**

The typicality prerequisite of Rule 23 requires that the claims of the representative plaintiffs be typical of the claims of the class. *See* Fed. R. Civ. P. 23(a)(3). The inquiry assesses "whether a sufficient relationship exists between the injury to the named plaintiff and the conduct affecting the class, so that the court may properly attribute a collective nature to the challenged conduct." *Sprague*, 133 F.3d at 399. This District has held that a plaintiff's claim is typical when "it arises from the same event or practice or course of conduct that gives rise to the claims of other class members, and if the named plaintiff's claims are based on the same legal theory." *Rikos v. Proctor & Gamble Co.*, No. 11-cv-226, 2018 WL 2009681, at *5 (S.D. Ohio Apr. 30, 2018). Here, typicality is satisfied here for many of the same reasons as commonality. *See Wal-Mart,* 564 U.S. at 349 n.5 (explaining that the commonality and typicality inquiries "tend to merge").

Plaintiff brings this Action on behalf of the Plan, and any recovery of lost benefits will go to "the Plan as a whole." *Shirk*, 2008 WL 4425535, at *2. Courts routinely find a participant's fiduciary breach claim to be typical of the claims of all participants in a plan. *See id.* at *3 ("Generally, there is little doubt that a class representative's breach of fiduciary duty claim is in every respect typical of those of his fellow class members."); *Karpik*, 2021 WL 757123, at *11 ("the fact that Plaintiffs brought the claims on behalf of the Plan weighs heavily in a Rule 23(a)(3) analysis of the parties' claims and defenses.") (internal quotations omitted); *Sacerdote,* 2018 WL 840364, at *3 (noting that analysis of the typicality factor is similar to the commonality analysis and finding that because "[e]ach named plaintiff is asserting a claim on behalf of the Plans . . . [t]he adjudication of the breach of fiduciary duty claims will not turn on any individual class member's circumstance"). The circumstances in this Action, in which Plaintiff alleges fiduciary breaches arising out of Defendants' management and administration of the Plan, are no exception.

Defendants' alleged Plan-wide conduct at issue in the Action is of a kind routinely found to support determinations of typicality. *See Karpik*, 2021 WL 757123, at *11 (noting that a finding of typicality "is further supported by the fact that ERISA contains unique standing and remedial provisions that allow a participant who sues for a breach of fiduciary duty to obtain plan-wide relief.") (citing *Shirk*, 2008 WL 4425535, at *3); *see generally In re Inter-Op Hip Prosthesis Liability Litig.*, 204 F.R.D. 330, 341 (N.D. Ohio 2001) ("Sometimes the issues are plain enough from the pleadings to determine whether the interests of the absent parties are fairly encompassed within the named plaintiff's claim . . .") (citing *General Telephone Co. of Southwest v. Falcon*, 457 U.S. 147, 160 (1982)). Likewise, the remedial theory asserted by Plaintiff here is identical among all members of the Class. *See Broadwing*, 252 F.R.D. at 378

(finding typicality when "the representative party's claims are based on the same legal theories as other Class Members"). In sum, Plaintiff's claims on behalf of the Plan are typical of all Class members' claims.

      **iv.**      **Adequacy**

Representative plaintiffs must also show that they will "fairly and adequately protect the interests of this class." Fed. R. Civ. P. 23(a)(4). This inquiry tests "the experience and ability of counsel for the plaintiffs and whether there is any antagonism between the interests of the plaintiffs and other members of the class they seek to represent." *Cross v. Nat'l Trust Life Ins. Co.*, 553 F.2d 1026, 1031 (6th Cir. 1977). The Sixth Circuit has instructed that the adequacy element consists of two criteria: "(1) the representatives must have common interests with the unnamed class members, and (2) it must appear that the representatives will vigorously prosecute the class action through qualified counsel." *Rikos*, 2018 WL 2009681, at *5 (citing *Senter v. Gen Motors Corp.*, 532 F.2d 511, 524–25 (6th Cir. 1976)).

Plaintiff's interests are tightly aligned with all other members of the Settlement Class by virtue of the very nature of Plaintiff's claims on behalf of the Plan. Plaintiff, acting in a representative capacity, seeks to enforce the duties that Defendants owed to the Plan and to recover damages and equitable relief due. *See* 29 U.S.C. §§ 1109(a), 1132(a)(2); *Mass Mut. Life Ins. Co. v. Russell,* 473 U.S. 134, 142 n.9 (1985). "The general rule that there is 'a relatively low likelihood of intra-class conflicts in cases of excessive fee claims' because the recovery is to the Plan, not to individual Plaintiffs, holds true here." *Beach v. JPMorgan Chase Bank, N.A.*, 2019 WL 2428631, at *8 (S.D.N.Y. June 11, 2019); *see also Shirk*, 2008 WL 4425535, at *3 (finding no antagonistic interests between the plaintiffs and the proposed class when then plaintiffs were former employees of defendants and participants in the plan). Since Plaintiff is pursuing claims on behalf of the Plan, there are no conflicts between Plaintiff's individual interests and the

interests of the Class. *See Shirk*, 2008 WL 4425535, at *3 ("Because the named Plaintiffs are challenging the same alleged unlawful conduct and seeking the same relief as would the rest of the class, the interests of the named plaintiffs are sufficiently aligned with those of the class members to satisfy the first prong of the adequacy of representation requirement."). Indeed, Plaintiff and Class members all share the same objectives, the same factual and legal positions, and the same interest in establishing Defendants' liability. *See Nationwide*, 2009 WL 8747486, at *10 (finding the first adequacy prong satisfied when plaintiffs' "interests are aligned with those of the Class as the factual and legal claims of Plaintiffs and the Class arise from the same nucleus of operative facts and course of conduct by Defendants").

A class representative needs only a basic understanding of the claims and a willingness to participate in the case, requirements that Plaintiff easily exceeds. *See Surowitz v. Hilton Hotels Corp.*, 383 U.S. 363, 373 (1966). Plaintiff has demonstrated her commitment to pursuing this Action on behalf of the Settlement Class and has achieved a very favorable result, which does not favor any member of the Settlement Class at the expense of others. *See* Berin Decl., at ¶ 3. Plaintiff clearly has, and will continue to, adequately represent all members of the Settlement Class. In addition, Plaintiff has retained qualified and competent counsel, whose adequacy is discussed in greater detail below. *See Bailey v. Verso Corp.*, 337 F.R.D. 500, 507 (S.D. Ohio 2021), *judgment entered*, No. 3:17-CV-332, 2021 WL 5815727 (S.D. Ohio Dec. 6, 2021) (finding the adequacy requirement satisfied by class counsel who were "experienced ERISA litigators" and had "administered the settlement of numerous retiree-benefit class actions").

**B.    The Settlement Class Satisfies Rule 23(b)(1)**

In addition to Rule 23(a), Plaintiff need only satisfy one subsection of Rule 23(b). *See Amchem*, 521 U.S. at 613–14. Courts routinely grant certification under Rule 23(b)(1) in ERISA fiduciary breach cases. *See Karpik*, 2021 WL 757123, at *11 (noting that cases involving

"allegations of fiduciary breaches to a trust or plan[] are precisely the type of cases that are encompassed by" Rule 23(b)(1)); *Ortiz v. Fibreboard Corp.*, 527 U.S. 815, 833–34 (1999) (calling breach of trust actions a "classic example" of a Rule 23(b)(1) class); *Shirk*, 2008 WL 4425535, at *4 ("courts have routinely found that class certification is appropriate under Rule 23(b), and most usually 23(b)(1)" in ERISA breach of fiduciary duty cases).

This is because "ERISA claims [], as a practical matter, adjudicate the interests of all plan participants." *Broadwing*, 252 F.R.D. at 379.  Individual adjudication risks contradictory outcomes, and "the conflicting declaratory and injunctive relief could make compliance impossible for Defendants." *Id.*  In other words, because ERISA actions authorize plan-wide relief, "there is a risk that failure to certify the class would leave future plaintiffs without relief (and there is also a risk of inconsistent dispositions that would prejudice the Defendants)." *Shirk*, 2008 WL 4425535, at *4.  This reasoning finds root in trust law, as a suit alleging a breach of trust by a trustee or other fiduciary affecting the members of a large class of beneficiaries requiring an accounting or similar procedure to restore the subject of the trust is a classic example of the Rule 23(b)(1)(B) action.  Fed. R. Civ. P. 23, Advisory Committee Note (1966). Plaintiff's claims on behalf of the Plan fall squarely within the Advisory Committee's example, as Plaintiff alleges "breaches of fiduciary duties affecting the Plan and the thousands of participants in the Plan." *Karpik*, 2021 WL 757123, at *12 (internal citation omitted).

### C.    Miller Shah Should Be Appointed as Class Counsel

In appointing Class Counsel, this Court should consider the Rule 23(g)(1)(A) factors:

> (i) the work counsel has done in identifying or investigating potential claims in this action; (ii) counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the action; (iii) counsel's knowledge of the applicable law; and (iv) the resources counsel will commit to representing the class.

Fed. R. Civ. P. 23(g)(1)(A).  Proposed Class Counsel, Miller Shah LLP ("Miller Shah"), are

exceedingly qualified under these factors. *See* Berin Decl., ¶¶ 5, 7. To date, Class Counsel have leveraged their experience and resources to vigorously pursue recovery on behalf of the Plan and protect the interests of all Class Members, including by comprehensively investigating the claims forming the basis of the Action, filing detailed pleadings, briefing several motions, and engaging in the discovery process. *Id.* ¶¶ 5, 7, 9. Class Counsel also have extensive experience litigating ERISA fiduciary breach cases and overseeing the administration of settlements in ERISA actions. *See id.* ¶ 5; *Kennedy v. United Healthcare of Ohio, Inc.*, 206 F.R.D. 191, 198 (S.D. Ohio 2002) (appointing class counsel that served as class counsel in "factually similar cases"); *Broadwing*, 252 F.R.D. at 378 (noting that plaintiffs' counsel "are experience in representing plaintiffs in ERISA and class action litigation generally" and that plaintiffs' counsel "vigorously and effectively pursued the interests of the Class"). Class Counsel will continue to leverage their wealth of relevant experience and resources on behalf of the Settlement Class through final resolution, including addressing inquiries from members of the Settlement Class and supervising the work of the Settlement Administrator. Accordingly, the Court should appoint Miller Shah as Class Counsel.

## II.    THE SETTLEMENT, NOTICE PLAN, AND PLAN OF ALLOCATION WARRANT PRELIMINARY APPROVAL

The first step in approving any proposed settlement in a class action is preliminary approval. *See Tenn. Ass'n of Health Maint. Orgs., Inc. v. Grier*, 262 F.3d 559, 565 (6th Cir. 2001). At this stage, the Court reviews the proposed settlement to determine whether it is within the "range of reasonableness" and whether, taken as a whole, it is "fair, reasonable, and adequate and in the public interest." *Hip Prosthesis*, 204 F.R.D. at 381–82. As this Court has recognized, the analysis begins with the premise that "settlement of class actions is generally favored and encouraged." *Broadwing*, 252 F.R.D. at 371 (quoting *Franks v. Kroger Co.*, 649 F.2d 1216,

1224 (6th Cir. 1981)).

### A. The Settlement Should Be Preliminarily Approved

There is a strong initial presumption that a proposed class action settlement is fair and reasonable when it is the result of arm's-length negotiations. *See Bailey*, 337 F.R.D. at 505 (instructing that the court should grant preliminary approval if the settlement "appears to be the product of serious, informed, non-collusive negotiations, has no obvious deficiencies, does not improperly grant preferential treatment to class representatives or segments of the class, and falls with the range of possible approval") (internal quotations omitted). As described above, the Settlement is the product of an extensive arm's-length process under the auspices of an experienced neutral mediator. Further, Class Counsel and Defendants' counsel are experienced in ERISA litigation, and each possess a thorough understanding of the factual and legal issues involved in the Action, which the Sixth Circuit has recognized as a factor weighing in favor of settlement approval. *See Karpik*, 2021 WL 757123, at *6 ("Class Counsel are skilled in class actions and ERISA litigation, and their recommendation that the Court should approve the Settlement is entitled to some deference."); *In re Packaged Ice Antitrust Litig.*, No. 08-MD-01952, 2011 WL 717519, at *11 (E.D. Mich. Feb. 22, 2011) ("Class counsel's judgment that settlement is in the best interest of the class is entitled to significant weight, and supports the fairness of the settlement.").

Class Counsel conducted substantial investigation and analysis of thousands of pages of documents. *See* Berin Decl. ¶¶ 6–7. Although this proposed Settlement Agreement comes at an early stage of the litigation, Class Counsel has extensively developed Plaintiff's claims on behalf of the Plan and Settlement Class. *See Nationwide*, 2009 WL 8747486, at *5 (approving settlement reached "at a relatively early stage of the proceedings" because the parties had "a clear view of the strengths and weaknesses of their cases") (internal quotations omitted). The

Parties were engaged in vigorous litigation when they agreed to the Settlement and further litigation promised to be lengthy and complex, involving numerous competing experts on liability issues concerning Plaintiff's claims and Defendants' defenses, as well as the Plan's alleged losses. The Parties likely would have filed dispositive motions and pretrial motions, including motions concerning the anticipated expert testimony. Thus, Plaintiff faced meaningful challenges to her ability to obtain a recovery on behalf of the Plan, even setting aside the additional complexity and delay of likely appeals, which strongly supports preliminary approval of the Settlement. *See Bailey*, 337 F.R.D. at 506 ("This settlement is particularly beneficial for class members because it guarantees them a pay-out without the corresponding uncertainty of dispositive motion practice"); *UAW v. Gen. Motors Corp.*, 497 F.3d 615, 632 (6th Cir. 2007) ("What makes these settlements particularly sensible, moreover, is that, even if this merits question favored one party over the other, the retirees still would have had ample reason to control the resolution of this dispute through negotiation today rather than litigation tomorrow.").

Class Counsel has significant experience in class action litigation generally and ERISA breach of fiduciary duty litigation in particular, and are of the opinion that the Settlement is fair and reasonable. *See Broadwing*, 252 F.R.D. at 375 (giving weight to the opinions of counsel for both sides in favor of settlement and noting that plaintiffs' and defendants' counsel were "experienced practitioners in the field of complex ERISA, class action, employment and securities litigation"); *Nationwide*, 2009 WL 8747486, at *5 ("The view of experienced counsel favoring the settlement is entitled to great weight."). The Settlement provides a substantial monetary recovery of $2,750,000.00 as well as meaningful non-monetary relief related to the ongoing management and administration of the Plan. Further, the Parties will submit the

Settlement to an independent fiduciary, which will provide an opinion on the Settlement's fairness before the final fairness hearing. *See Broadwing*, 252 F.R.D. at 375 (according weight to a report filed by an independent fiduciary finding a proposed settlement fair and favorable to the plan).

In sum, the Settlement is the product of vigorous litigation and arm's-length negotiation by experienced and well-informed counsel, and it provides significant relief to the Settlement Class. Accordingly, the Court should find the Settlement is fair, reasonable, and adequate, and merits preliminary approval.

### B. The Notice Plan Should Be Preliminarily Approved

In addition to preliminarily approving the proposed Settlement, the Court must approve the proposed means of notifying Settlement Class members. *See* Fed. R. Civ. P. 23(c)(2). Due process and Rule 23(e) do not require that each Class Member receive notice, but rather that class notice be "reasonably calculated, under the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane v. Central Hanover Bank and Trust Co.*, 339 U.S. 306, 314 (1950). "Individual notice must be provided to those class members who are identifiable through reasonable effort." *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 175 (1974).

The Notice Plan is designed to reach the largest number of Settlement Class members possible. The Settlement Notice will be sent by email and/or first-class mail to the last known address of each Settlement Class member prior to the Fairness Hearing. Notably, all Settlement Class members had Plan accounts, so the Plan's recordkeeper has their addresses and other identifying information. *See Johnson v. Midwest Logistics Sys., Ltd.*, No. 2:11-CV-1061, 2013 WL 2295880, at *8–9 (S.D. Ohio May 24, 2013) (finding delivering notice by first class mail to individual class members to be the best notice practicable). Additionally, the Notice, Settlement

Agreement, and other litigation documents will be posted on a website created by the Settlement Administrator, and the Settlement Administrator will establish and monitor a toll-free number to field Settlement Class member inquiries.  The Notice will also provide Class Counsels' contact information.

The Notice Plan satisfies all due process considerations and meets the requirements of Rule 23(e).  The Notice Plan clearly describes: (i) the terms and operation of the Settlement; (ii) the nature and extent of the Released Claims; (iii) the maximum attorneys' fees, litigation expenses, and case contribution award that may be sought; (iv) the procedure and timing for objections; and (v) subject to the Court's schedule, the date and location of the Fairness Hearing.

### C.    The Plan of Allocation Should Be Preliminarily Approved

The Plan of Allocation provides recovery to members of the Settlement Class on a *pro rata* basis, with no preferential treatment for the Class Representative or any segment of the Settlement Class.  This is substantially similar to plans approved by courts in analogous ERISA litigation.  *See, e.g.*, *Terraza v. Safeway Inc.*, No. 16-cv-03994-JST, Dkt. 268 (N.D. Cal. Sept. 8, 2020) ("Settlement Scores will be determined by calculating the Class Member's year-end account balance during the Class Period and dividing that amount by the total sum of year-end asset amounts in the Plan during the Class Period . . . ."); *Karpik*, 2021 WL 757123, at *2 (approving a plan of allocation distributing the settlement fund on a pro rata basis).   In light of the equitable treatment of Class Members, the Court should find that the Plan of Allocation is also fair, reasonable, and adequate.

### <u>CONCLUSION</u>

Plaintiff respectfully submits that this Court should preliminarily approve the Settlement, Notice Plan, and Plan of Allocation, preliminarily certify the Settlement Class, and set a date for a final fairness hearing.

DATED: August 11, 2022

Respectfully submitted,

*/s/ Jeffrey S. Goldenberg*
Jeffrey S. Goldenberg (0063771)
Todd B. Naylor (0068388)
GOLDENBERG SCHNEIDER, LPA
4445 Lake Forest Drive, Suite 490
Cincinnati, OH 45242
Telephone: (513) 345-8291
Facsimile: (513) 345-8294
Email: jgoldenberg@gs-legal.com
        tnaylor@gs-legal.com

James C. Shah
Alec J. Berin
MILLER SHAH LLP
1845 Walnut Street, Suite 806
Philadelphia, PA 19103
Telephone: (866) 540-5505
Facsimile: (866) 300-7367
Email: jcshah@millershah.com
        ajberin@millershah.com

James E. Miller
Laurie Rubinow
MILLER SHAH LLP
65 Main Street
Chester, CT 06412
Telephone: (866) 540-5505
Facsimile: (866) 300-7367
Email: jemiller@millershah.com
        lrubinow@millershah.com

Ronald S. Kravitz
MILLER SHAH LLP
3 Embarcadero Center, Suite 1650
San Francisco, CA 94111
Telephone: (866) 540-5505
Facsimile: (866) 300-7367
Email: rskravitz@millershah.com

Kolin C. Tang
MILLER SHAH LLP
201 Filbert Street, Suite 201
San Francisco, CA 94133
Telephone: (866) 540-5505
Facsimile: (866) 300-7367
Email: kctang@millershah.com

*Attorneys for Plaintiff, the Plan and the*
*Proposed Settlement Class*

## <u>CERTIFICATE OF COMPLIANCE WITH WORD COUNT</u>

I certify that this Memorandum complies with the page and type requirements under

Local Rule 7.2(a)(3) because it is less than 20 pages double-spaced.

<u>*/s/ Jeffrey S. Goldenberg*</u>
Jeffrey S. Goldenberg

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on August 11, 2022, I electronically filed the foregoing Plaintiffs'

Memorandum in Support of Unopposed Motion for Preliminary Approval of Class Action

Settlement with the Clerk of Court, and upon the counsel of record using the CM/ECF system.

*/s/ Jeffrey S. Goldenberg*
Jeffrey S. Goldenberg
