**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | |
|---|---|
| DONNA ALLISON,<br>Individually and as a representative of a<br>class of similarly situated persons, on<br>behalf of the L BRANDS, INC. 401(K)<br>SAVINGS AND RETIREMENT PLAN, | Civil Action<br>No: 2:20-cv-06018-EAS-CMV |
| Plaintiff, | |
| v. | |
| L BRANDS, INC., L BRANDS SERVICE<br>COMPANY, LLC, THE RETIREMENT PLAN<br>COMMITTEE OF THE L BRANDS, INC.<br>401(K) SAVINGS AND RETIREMENT PLAN;<br>and DOES No. 1–10,<br>Whose Names Are Currently Unknown, | |
| Defendants. | December 9, 2022 |

---

**PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORT OF THE UNOPPOSED**
**MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT**

---

# TABLE OF CONTENTS

Table of Authorities ....................................................................................................... ii

I.      INTRODUCTION ......................................................................................... 1

II.     BACKGROUND ............................................................................................ 2

        A.      The Settlement ................................................................................. 2

        B.      Plaintiff's Claims and Procedural History ...................................... 4

        C.      Preliminary Approval and Class Notice ......................................... 4

        D.      Independent Fiduciary Review ....................................................... 6

III.    STANDARD OF REVIEW ........................................................................... 6

IV.     ARGUMENT ................................................................................................. 8

        A.      The Settlement is Fair, Reasonable and Adequate ......................... 8

                1.      The Recovery Provided by the Settlement is Fair, Reasonable, and
                        Equitable ............................................................................. 8

                2.      Continued Litigation Would Have Entailed Significant Risk ................... 9

                3.      ERISA Class Actions are Complex, Expensive, and Often Lengthy ........ 9

                4.      The Settlement is the Product of Arm's-Length Negotiations Conducted
                        After Sufficient Discovery and Adversarial Motion Practice .................. 11

                5.      Class Counsel and Plaintiff Support the Settlement and the Settlement
                        Class has Reacted Positively .................................................. 12

                6.      The Settlement Serves the Public Interest ............................... 13

        B.      Class Notice Was Reasonable ........................................................ 14

        C.      Certification of the Settlement Class Should be Maintained ................ 15

IV.     CONCLUSION ............................................................................................. 15

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Abbott v. Lockheed Martin Corp.*,
  2015 WL 4398475 (S.D. Ill. July 17, 2015) ................................................................. 10

*Ball v. Kasich*,
  2020 WL 1969289 (S.D. Ohio Apr. 24, 2020) ..................................................... 7, 12, 13

*Barnes v. Winking Lizard, Inc.*,
  2019 WL 1614822 (N.D. Ohio Mar. 26, 2019) ........................................................... 10

*Brotherson v. Cleveland*,
  141 F. Supp. 2d 894 (S.D. Ohio Feb. 21, 2001) ................................................. 7, 12, 13

*Does 1–2 v. Déjà Vu Servs., Inc.*,
  925 F.3d 886 (6th Cir. 2019) ..................................................................................... 12

*Ganci v. MBF Inspection Servs., Inc.*,
  2019 WL 6485159 (S.D. Ohio Dec. 3, 2019) ............................................................... 9

*Gascho v. Global Health Fitness Holdings, LLC*,
  822 F.3d 269 (6th Cir. 2016) ..................................................................................... 13

*Graybill v. Petta Enterprises, LLC*,
  2018 WL 4573289 (S.D. Ohio Sept. 25, 2018) ........................................................... 15

*Hainey v. Parrott*,
  617 F. Supp. 2d 668 (S.D. Ohio Sept. 20, 2007) ........................................................ 11

*In re Broadwing Inc. ERISA Litig.*,
  252 F.R.D. 369 (S.D. Ohio 2006) .............................................................................. 13

*In re Corrugated Container Antitrust Litig.*,
  643 F.2d 195 (5th Cir. 1981) ..................................................................................... 12

*In re Marsh ERISA Litig.*,
  265 F.R.D. 128 (S.D.N.Y. 2010) ................................................................................ 10

*In re Nationwide Fin. Servs. Litig.*,
  2009 WL 8747486 (S.D. Ohio Aug. 19, 2009) ............................................................. 9

*In re Polyurethane Foam Antitrust Litig.*,
  2015 WL 1639269 (N.D. Ohio Feb. 26, 2015) ............................................................. 8

*In re Rite Aid Corp. Sec. Litig.*,
  146 F. Supp. 2d 706 (E.D. Pa. 2001) .......................................................................... 8

*In re: Whirlpool Corp. Front-Loading Washer Prods. Liability Litig.*,
  2016 WL 5338012 (N.D. Ohio Sept. 23, 2016) ............................................... 9, 10, 13

*Intl. Union, United Auto., Aerospace, and Agr. Implement Workers of Am. ("UAW") v. Gen. Motors Corp.*,
  497 F.3d 615 (6th Cir. 2007) ...................................................................................... 7

*Johnson v. Fujitsu Tech. & Business of America, Inc.*,
  2018 WL 2183253 (N.D. Cal. May 11, 2018) ............................................................ 8

*Koenig v. USA Hockey, Inc.*,
  2012 WL 12926023 .................................................................................................. 11

*Krueger v. Ameriprise*,
  2015 WL 4246879 (D. Minn. July 13, 2015) ............................................................ 10

*Mees v. Skreened, Ltd.*,
  2016 WL 67521 (S.D. Ohio Jan. 6, 2016) .................................................................. 8

*Phillips Petroleum Co. v. Shutts*,
  472 U.S. 797 (1985) .................................................................................................. 14

*R. & R. adopted*,
  2016 WL 305166 (S.D. Ohio Jan. 26, 2016) .............................................................. 8

*Shanechian v. Macy's*,
  2013 WL 12178108 (S.D. Ohio June 25, 2013) ..................................................... 9, 12

*Sims v. BB&T Corp.*,
  2019 WL 1995314 (M.D.N.C. May 6, 2019) .............................................................. 8

*Stanley v. Turner Oil & Gas Properties, Inc.*,
  2018 WL 2928028 (S.D. Ohio June 12, 2018) .......................................................... 11

*Stinson v. Delta Mgmt. Assocs.*,
  302 F.R.D. 160 (S.D. Ohio 2014) ............................................................................. 13

*Tibble v. Edison Int'l*,
  2017 WL 3523737 (C.D. Cal. Aug. 16, 2017) .......................................................... 10

*Tussey v. ABB Inc.*,
  2017 WL 6343803 (W.D. Mo. Dec. 12, 2017) .......................................................... 10

*Williams v. Vukovich*,
  720 F.2d 909 (6th Cir. 1983) ...................................................................................... 7

*Wright v. Premier Courier, Inc.*,
  2018 WL 3966253 (S.D. Ohio Aug. 17, 2018) ........................................................ 9, 14

**Rules**

Fed. R. Civ. P. 23(c)(2)(B) ........................................................................................ 14

Federal Rules of Civil Procedure 23(a) and 23(b)(1) ...................................................... 15

**Regulations**

Class Exemption 2003-39, "Release of Claims and Extensions of Credit in Connection with
  Litigation,
  68 Fed. Reg. 75,632 ............................................................................................... 6

**Other Authorities**

2 Herbert Newberg & Alba Conte, Newberg on Class Actions § 11.48 (3d ed. 1992) .................... 13

Plaintiff, Donna Allison, on behalf of the proposed Settlement Class[1] and the L Brands, Inc. 401(k) Savings and Retirement Plan (the "Plan"), respectfully submits this Memorandum of Law in Support of her Unopposed Motion for Final Approval of Class Action Settlement (the "Motion"), pursuant to the Court's Order Granting Preliminary Approval entered on September 20, 2022 (ECF No. 62, "Preliminary Approval Order"). Plaintiff respectfully requests that the Court grant final approval of the Settlement. Defendants do not oppose the Motion.

## INTRODUCTION

On September 20, 2022, following full briefing, the Court entered the Preliminary Approval Order (ECF No. 62), which preliminarily approved the Settlement and conditionally certified the following Settlement Class:

> All participants and beneficiaries of the Plan, at any time during the Class Period, including any beneficiary of a deceased person who was a participant in the Plan at any time during the Class Period, and any Alternate Payees, in the case of a person subject to a QDRO who was a participant in the Plan at any time during the Class Period. The Class shall exclude all Defendants, including members of the Administrative Committee during the Class Period.

In granting preliminary approval, the Court also determined that the Settlement, a hard-fought compromise resulting from adversarial, arm's-length negotiations, was sufficiently fair, reasonable, and adequate to warrant preliminary approval. *See* Preliminary Approval Order, ECF No. 62, at 3–4. In addition, the Court found that the form and procedure for distributing notice to the Settlement Class warranted approval. *See id.*, at 7–8. Accordingly, the Court directed the Settlement Administrator to distribute Notice to the Settlement Class and set the Fairness Hearing on January 25, 2023 at 9:30 a.m. to make a final determination about whether the Settlement and related applications should be approved.

---

[1]Capitalized terms not otherwise defined herein shall have the same meaning as in the Settlement Agreement and Release dated August 11, 2022 and filed on that date (ECF No. 60-3).

As explained in the contemporaneously filed motion for awards of attorneys' fees, litigation expenses, and a case contribution award to Plaintiff, the requested distributions are appropriate under the Settlement Agreement and reasonable in comparison to awards in similar cases. Specifically, Plaintiffs and Class Counsel seek attorneys' fees of one-third of the Settlement Fund, as well as $26,062.30 in reasonable and necessary litigation expenses, which are consistent with requests consistently granted by courts in this District. There have also been no objections to the Settlement by members of the Class—on the contrary, Class Counsel has received and responded to inquiries by numerous Class Members concerning their anticipated participation in the Settlement—and an independent fiduciary retained by Defendants on behalf of the Plan is currently reviewing the terms of the Settlement, including interviews with the Parties, review of the pleadings and briefing filed in this Court, as well as the Parties' mediation materials, the results of which will be filed with the Court by no later than January 4, 2023.

In light of the positive reception of Class Members, meaningful benefits made available by the Settlement (which many Class Members will receive without the need to file a claim), and in order to avoid the burden, expensive, inconvenience, and uncertainty of continued litigation, Plaintiffs now request that the Court grant final approval of the Settlement.

## BACKGROUND

### A. The Settlement

The Parties have agreed to the Settlement in order to resolve this Action, which Plaintiff brought under ERISA. The Settlement provides for monetary relief to the Settlement Class in the amount of $2,750,000.00, as well as certain non-monetary terms, which will provide a substantial recovery to members of the Settlement Class. Specifically, the Settlement provides for the following prospective relief aimed at strengthening the process by which the Plan is

managed and administered:

1. Defendants will conduct a request for proposal regarding the provision of recordkeeping services for the Plan within three (3) years following the Effective Date; and

2. The Administrative Committee will review and evaluate the Plan's investment policy statement within three (3) years following the Effective Date

The Settlement provides that the monetary relief will be deposited into a Qualified Settlement Fund to be allocated to Participants, Former Participants, Beneficiaries, and Alternate Payees of the Plan pursuant to the Plan of Allocation, which provides for *pro rata* distribution of Settlement proceeds. *See* ECF No. 60-3, Settlement Agreement §§ 1.37, 3.2. In addition, the Settlement Agreement provides for the approval of the Settlement by an Independent Fiduciary. *See id.* § 2.6. In light of the substantial relief provided by the Settlement and the risks of continued litigation, Plaintiff and Class Counsel believe the Settlement is fair, reasonable, adequate, and in the best interests of the Settlement Class. Further, resolving the Action at this juncture allows the Parties to avoid continued and costly litigation that would deplete resources which could otherwise be used for the resolution of the Action, and which could result in a recovery less than that provided by the Settlement, or no recovery at all.

Plaintiff and Class Counsel have vigorously pursued relief on behalf of the Plan. The Parties agreed to the Settlement after extensive motion practice, initial discovery, and arm's-length negotiations by experienced counsel, including at a private mediation session with David Geronemus, Esquire, of JAMS, a well-respected, neutral mediator who is experienced in mediating claims of the kind at issue in the Action. Prior to the mediation, the Parties commenced discovery that included the production and review of documents related to Plan administration and Defendants' alleged conduct. *See* Declaration of Laurie Rubinow ("Rubinow Decl."), a true and correct copy of which is attached as Exhibit "B," ¶ 3. In preparation for

mediation, the Parties communicated their positions regarding the merits of Plaintiff's claims and Defendants' defenses, and the potential associated damages. *Id.* Thus, the Parties were armed with sufficient information to accurately evaluate the strengths and weaknesses of their claims and defenses.

### B. Plaintiff's Claims and Procedural History

Plaintiff alleges that Defendants are fiduciaries of the Plan and breached duties owed to the Plan and its participants and beneficiaries by: (1) causing the Plan to pay unreasonable investment management fees; and (2) causing the Plan to pay unreasonable recordkeeping and administrative fees. *See* ECF No. 1, Compl. ¶¶ 24–34. Plaintiff's allegations are set forth in full in the Complaint, which Plaintiff filed on November 23, 2020. Defendants moved to dismiss on February 12, 2021. *See* ECF Nos. 7, 8. While Defendants' motion to dismiss was pending, the parties engaged in meaningful initial discovery efforts, including the production and review of more than 7,000 pages of documents related to Plan administration and Defendants' alleged conduct. *See* Rubinow Decl. ¶ 3. The Court denied Defendants' motion to dismiss on September 16, 2021, *see* ECF No. 39, and the Court entered a Preliminary Pretrial Order on October 18, 2021, *see* ECF No. 45, that included deadlines for the Parties to exchange settlement communications and reflected the Parties' agreement to make a good faith effort to resolve the case by settlement. The Parties subsequently agreed to proceed with private mediation.

### C. Preliminary Approval and Class Notice

On September 20, 2022, the Court entered the Preliminary Approval Order, preliminarily approving the Settlement, including the notice program, and conditionally certifying the Settlement Class. *See* ECF 62. In accordance with the Preliminary Approval Order, Strategic Claims Services ("SCS") disseminated the Settlement Notice by electronic and/or first-class mail

to more than 67,000 Class Members and the Former Participant Claim Form to each Class Member without an Active Account by November 4, 2022. *See* Declaration of Cornelia Vieira Concerning the Mailing of the Settlement Notice and Former Participant Claim Form ("Vieira Decl."), a true and correct copy of which is attached as Exhibit "A," at ¶¶ 4–5. The original list was run through the United States Postal Service national change of address service to obtain new address information prior to the initial mailing. By SCS. *See id.* SCS re-mailed any Notices and Former Participant Claim Forms returned as undeliverable for which forwarding addresses were available. *See id.* ¶¶ 3, 9–10. For those returned as undeliverable for which no forwarding addresses were available, SCS utilized Experian "skip tracing" to obtain a new address and re-mailed Notices and Former Participant Claim Forms to each individual for whom an updated address was discovered. *See id.* SCS re-mailed approximately 2,800 Notices and Former Participant Claim Forms that were initially returned as undeliverable. *See id.* ¶ 9. Pursuant to the terms of the Settlement, SCS also established a website for the Settlement, which provides information about the case and relevant deadlines and also makes available a number of pertinent documents, including the following: (i) Notice; (ii) Former Participant Claim Form; (iii) the Preliminary Approval Order; (iv) the Settlement Agreement and exhibits; and (v) the Complaint. *See id.* ¶¶ 3, 6. Furthermore, in accordance with the Settlement Agreement and the Preliminary Approval Order, SCS established a toll-free telephone number and email address to which Class Members could direct questions about the Settlement. *See id.* ¶¶ 3, 7. SCS will also send a reminder post card by first-class mail and e-mail (when available) to each Former Participant, Beneficiary, and Alternate Payee who do not return the Former Participant Claim Form prior to the deadline for submission of the same. *See id.* ¶ 3.

**D. Independent Fiduciary Review**

To further ensure that the Settlement Agreement is fair, reasonable, and adequate, as well as in compliance with ERISA's prohibited transaction provisions, the Independent Fiduciary will approve and authorize the Settlement on behalf of the Plan. The Independent Fiduciary's report will be provided to the Parties and filed on the docket by January 4, 2023, providing the Court another touchstone to assess the fairness of the Settlement and related applications. The Parties are presently cooperating to provide the Independent Fiduciary with sufficient information to enable it to evaluate the Settlement, including all requested public and confidential documents (including confidential expert materials, if requested), and separate interviews of the Parties' counsel by the Independent Fiduciary. Further, the Independent Fiduciary will comply with all relevant conditions set forth in Prohibited Transaction Class Exemption 2003-39, "Release of Claims and Extensions of Credit in Connection with Litigation," issued December 31, 2003 by the United States Department of Labor, 68 Fed. Reg. 75,632, as amended ("PTE 2003-39"), in making its determination, for the purpose of Defendants' reliance on PTE 2003-30. The Independent Fiduciary's report will set forth an opinion on the fairness and adequacy of the Settlement, including Plaintiffs' requests for attorneys' fees, expenses, and case contribution awards. The Independent Fiduciary's report will provide a separate basis for the Court to assess the fairness and adequacy of the Settlement, as well as the requested attorneys' fees, expenses, and service awards.

In sum, all prerequisites for final approval of the Settlement and certification of the Settlement Class are satisfied.

**STANDARD OF REVIEW**

"There are three steps which must be taken by the court in order to approve a settlement: (1) the court must preliminarily approve the proposed settlement, (2) members of the class must

be given notice of the proposed settlement, and (3) after holding a hearing, the court must give its final approval of the settlement." *Brotherson v. Cleveland*, 141 F. Supp. 2d 894, 903 (S.D. Ohio Feb. 21, 2001) (citing *Williams v. Vukovich*, 720 F.2d 909, 921 (6th Cir. 1983)). The Court previously granted preliminary approval and members of the Settlement Class have been provided notice. Accordingly, the Court must now consider whether to grant final approval of the Settlement through a determination of "whether the proposed settlement is fair, adequate, and reasonable under the circumstances, and whether the interests of the class as a whole are better served if the litigation is resolved by the settlement rather than pursued." *Id.* Since the Court has already granted preliminary approval based on its previous review of the Settlement, as well as the proposed Notice Plan and Plan of Allocation, as well as other papers, "the settlement is presumptively reasonable, and an individual who objects has a heavy burden of proving the settlement is unreasonable." *Id.*

District courts within the Sixth Circuit take into account the following factors in evaluating whether a settlement is fair, reasonable, and adequate:

(1)     the risk of fraud or collusion;
(2)     the complexity, expense and likely duration of the litigation;
(3)     the amount of discovery engaged in by the parties;
(4)     the likelihood of success on the merits;
(5)     the opinions of class counsel and class representatives;
(6)     the reaction of absent class members; and
(7)     the public interest.

*See Ball v. Kasich*, 2020 WL 1969289, at *5 (S.D. Ohio Apr. 24, 2020) (citing *Intl. Union, United Auto., Aerospace, and Agr. Implement Workers of Am. ("UAW") v. Gen. Motors Corp.*, 497 F.3d 615, 631 (6th Cir. 2007)).

## ARGUMENT

### A. The Settlement is Fair, Reasonable and Adequate

#### 1. The Recovery Provided by the Settlement is Fair, Reasonable, and Equitable

The Settlement provides substantial monetary relief, as well as meaningful non-monetary relief related to the ongoing management and administration of the Plan. Indeed, Plaintiffs and their experts have determined that realistically recoverable losses range from $2,915,340.55 to $3,452,540.05. *See* Rubinow Decl. ¶ 17. Thus, the Settlement provides recovery of 79.65% to 94.32% of such losses, even setting aside non-monetary relief for the Plan, with the recovery amounting to 86.37% of the mid-point of likely recoverable damages. *Id*. It also bears noting that that the Plan of Allocation, which provides for *pro rata* distribution of the Settlement Fund, is consistent with allocation methodologies approved in this District.

Even setting aside the non-monetary relief provided by the Settlement, the recovery compares highly favorably to recoveries in similar matter in this Circuit and around the country. *See Sims v. BB&T Corp.*, 2019 WL 1995314, at *5 (M.D.N.C. May 6, 2019) (approving $24 million ERISA 401(k) settlement that represented 19% of estimated damages); *Johnson v. Fujitsu Tech. & Business of America, Inc.*, 2018 WL 2183253, at *6-7 (N.D. Cal. May 11, 2018) (approving $14 million ERISA 401(k) settlement that represented "just under 10% of the Plaintiffs' most aggressive 'all in' measure of damages"); *In re Polyurethane Foam Antitrust Litig.*, 2015 WL 1639269, at *5 (N.D. Ohio Feb. 26, 2015) ("A settlement figure that equates to roughly 18 percent of the best-case-scenario classwide [damages] is an impressive result in view of these possible trial outcomes."); *Mees v. Skreened, Ltd.*, 2016 WL 67521, at *5 (S.D. Ohio Jan. 6, 2016), *R. & R. adopted*, 2016 WL 305166 (S.D. Ohio Jan. 26, 2016) (approving settlement where counsel recovered 25% of alleged damages); *see also In re Rite Aid Corp. Sec. Litig.*, 146 F. Supp. 2d 706, 715 (E.D. Pa. 2001) (noting that since 1995, class action settlements

have typically "recovered between 5.5% and 6.2% of the class members' estimated losses").

### 2. Continued Litigation Would Have Entailed Significant Risk

The Parties were engaged in vigorous litigation when they agreed to the Settlement and further litigation promised to be lengthy and complex, involving numerous competing experts on liability issues concerning Plaintiffs' claims and Defendants' defenses, as well as the Plan's alleged losses. Indeed, at the time at which the Settlement was negotiated, the Court had denied Defendants' motion to dismiss and the Parties were embarking on a lengthy discovery process. Further dispositive motions and pretrial motions would likely have followed, including motions for summary judgment and concerning the admissibility of anticipated expert testimony. Thus, Plaintiffs faced meaningful challenges to their ability to obtain a recovery on behalf of the Plan, which strongly supports final approval of the Settlement. *See In re Nationwide Fin. Servs. Litig.*, 2009 WL 8747486, at *4 (S.D. Ohio Aug. 19, 2009) (noting that the risk of continued litigation includes the risk that there could be no recovery at all). At bottom, while Plaintiff believes her case was strong, "the merits of the Class's case are not so overwhelming that continued litigation is a vastly better option than settlement." *In re: Whirlpool Corp. Front-Loading Washer Prods. Liability Litig.*, 2016 WL 5338012, at *11 (N.D. Ohio Sept. 23, 2016); *cf. Shanechian v. Macy's*, 2013 WL 12178108, at *4 (S.D. Ohio June 25, 2013) (noting difficulty of proving both liability and damages at trial in ERISA breach of fiduciary duty class action even where Plaintiffs prevailed on motion to dismiss and class certification).

### 3. ERISA Class Actions are Complex, Expensive, and Often Lengthy

As a general matter, "[m]ost class actions are inherently complex and settlement avoids the costs, delays, and multitude of other problems associated with them." *Ganci v. MBF Inspection Servs., Inc.*, 2019 WL 6485159, at *3 (S.D. Ohio Dec. 3, 2019) (quoting *Wright v. Premier Courier, Inc.*, 2018 WL 3966253, at *3 (S.D. Ohio Aug. 17, 2018)) (quotation omitted).

The complexity inherent in class actions is amplified in ERISA class actions. Indeed, it is well-recognized that "ERISA is a complex field that involves difficult and novel legal theories and often leads to lengthy litigation." *Krueger v. Ameriprise*, 2015 WL 4246879, at *1 (D. Minn. July 13, 2015); *see also Abbott v. Lockheed Martin Corp.*, 2015 WL 4398475, at *2 (S.D. Ill. July 17, 2015) (noting that ERSIA 401(k) cases are "particularly complex"); *In re Marsh ERISA Litig.*, 265 F.R.D. 128, 138 (S.D.N.Y. 2010) ("Many courts have recognized the complexity of ERISA breach of fiduciary duty actions."). In fact, it is not unusual for ERISA 401(k) cases to extend for a decade or longer before final resolution. *See Tussey v. ABB Inc.*, 2017 WL 6343803, at *3 (W.D. Mo. Dec. 12, 2017) (requesting proposed findings more than ten years after suit was filed on December 29, 2006); *Tibble v. Edison Int'l*, 2017 WL 3523737, at *15 (C.D. Cal. Aug. 16, 2017) (outlining remaining issues ten years after suit was filed on August 16, 2007); *Abbott*, 2015 WL 4398475, at *4 (noting that the case had originally been filed on "September 11, 2006").

Continued litigation would promise lengthy fact and expert discovery, significant additional motion practice, and a trial, setting aside likely appeals. *See Barnes*, 2019 WL 1614822, at *2 (N.D. Ohio Mar. 26, 2019) ("If this case was not resolved by settlement and continued to be litigated through summary judgment motions, decertification/class action certification motions, trial, and possible appeals, there is no guarantee Plaintiffs would have prevailed on these disputes."); *see also Whirlpool Corp.*, 2016 WL 5338012, at *10 ("Settlement avoids a huge consumption of resources of the parties and the Court."). When balanced against the likely duration, complexity, and expense of continued litigation, the Settlement—which provides a substantial portion of the Plan's losses as monetary relief and prospective relief for the Plan—is especially favorable for the Settlement Class.

### 4. The Settlement is the Product of Arm's-Length Negotiations Conducted After Sufficient Discovery and Adversarial Motion Practice

In this Circuit, "[c]ourts presume the absence of fraud or collusion" in reaching a settlement "unless there is evidence to the contrary." *Stanley v. Turner Oil & Gas Properties, Inc.*, 2018 WL 2928028, at *5 (S.D. Ohio June 12, 2018). Accordingly, courts consistently approve class action settlements reached through arms-length negotiations after meaningful discovery. *See Koenig*, 2012 WL 12926023, at *4 ("Based on the pleadings filed, as well as the discovery and mediation efforts, the Parties have a clear view of the strengths and weaknesses of their cases.") (citation omitted). The circumstances surrounding negotiation of the Settlement confirm the absence of collusion and support a finding that the Settlement was reached after all parties obtained sufficient information to understand the strengths and weaknesses of their claims and defenses.

The Settlement was reached during a mediation with David Geronemus, Esquire, of JAMS, a well-respected, neutral mediator who is experienced in mediating claims of the kind at issue in the Action. "The participation of an independent mediator in the settlement negotiations virtually insures [sic] that the negotiations were conducted at arm's length and without collusion between the parties." *Hainey v. Parrott*, 617 F. Supp. 2d 668, 673 (S.D. Ohio Sept. 20, 2007). Before the mediation, the parties exchanged mediation briefs setting forth their positions on issues concerning liability and damages. During the mediation, Mr. Geronemus provided meaningful feedback concerning the parties' positions and facilitated the exchange of additional information to assist the parties in understanding the risks they faced in continuing litigation.

Although discovery was at a relatively early stage, the parties exchanged information sufficient to evaluate Plaintiff's claims and Defendants' defenses. *See* Rubinow Decl. ¶ 3. This information concerned Defendants' management and administration of the Plan, the Plan's fees

and expenses, and investment vehicles, as well as Plaintiff's participation in the Plan and suitability to serve as a representative of the Plan and the Class. *See id.* In addition, the parties exchanged further information during the mediation process. Indeed, "courts have held that settlements are permissible where, 'notwithstanding the status of discovery, plaintiffs' negotiators had access to a plethora of information regarding the facts of their case.'" *Does 1–2 v. Déjà Vu Servs., Inc.*, 925 F.3d 886, 898 (6th Cir. 2019) (quoting *In re Corrugated Container Antitrust Litig.*, 643 F.2d 195, 211 (5th Cir. 1981)). In sum, "[t]his process advised the Parties of the strengths and weaknesses of their respective positions." *Brotherson*, 141 F. Supp. 2d at 905.

### 5. Class Counsel and Plaintiff Support the Settlement and the Settlement Class has Reacted Positively

The positive response that the Settlement has received from numerous stakeholders, including Class Counsel, the Class Representatives, and absent class members, further supports approval the Settlement. Indeed, to date, there have been *no objections* to any aspect of the Settlement, including the notice program and Plan of Allocation, or the anticipated applications for awards of attorneys' fees, litigation expenses, or case contribution award.

Plaintiff and Class Counsel, who have vigorously pursued litigation of the Plan's claims since even before this Action was filed, believe the Settlement is in the best interests of the Plan and the Settlement Class. "The Sixth Circuit has stated that 'court[s] should defer to the judgment of experienced counsel who [have] competently evaluated the strength of [their] proofs.'" *Ball*, 2020 WL 1969289, at *7 (quoting *Vuokovich*, 720 F.2d at 920 (citations omitted)). Class Counsel is experienced in similar ERISA class actions and has concluded that the Settlement is fair, reasonable, and adequate, *see* Rubinow Decl. ¶ 13, supporting approval of the Settlement. *See Shanechian*, 2013 WL 12178108, at *5 (counsel's experience in similar ERISA class actions and recommendation to approve ERISA settlement supports final approval).

Moreover, Plaintiff has been engaged in this litigation since its inception, including during the mediation process, and supports the Settlement.

To date, there have been no objections to the Settlement from the more than 60,000 members of the Settlement Class who received notice of the Settlement and related applications. The lack of objections "indicates that the Class supports the Settlement." *In re Broadwing Inc. ERISA Litig.*, 252 F.R.D. 369, 376 (S.D. Ohio 2006) (citation omitted); *see also Brotherson*, 141 F. Supp. 2d at 906 (citing 2 Herbert Newberg & Alba Conte, Newberg on Class Actions § 11.48 (3d ed. 1992)) ("[A] relatively small number of class members who object is an indication of a settlement's fairness.").

In addition, the Independent Fiduciary retained on behalf of the Plan will submit its report by January 4, 2023, which will reflect its evaluation of each aspect of the Settlement, notice program, and related applications, and provide independent grounds for the Court to assess whether the Settlement merits final approval.

### 6. The Settlement Serves the Public Interest

Settlement of a complex class action such as this also serves the broader public interest. "Settlements of complicated cases typically meet this factor because 'there is a strong public interest in encouraging settlement of complex litigation and class action suits because they are notoriously difficult and unpredictable and settlement conserves judicial resources.'" *Ball*, 2020 WL 1969289, at *8 (quoting *Déjà Vu Servs.*, 925 F.3d at 899). Consistent with this public interest rationale, the Settlement "provides relief for a substantial number of class members, avoids further litigation, and frees the Court's judicial resources." *Whirlpool Corp.*, 2016 WL 5338012, at *12 (quoting *Stinson v. Delta Mgmt. Assocs.*, 302 F.R.D. 160, 165 (S.D. Ohio 2014)). Indeed, the public interest factor is particularly compelling here because of the nature of this ERISA breach of fiduciary duty actions, which are brought under a remedial scheme that

provides a right of action to participants and beneficiaries in retirement plans, as well as the Department of Labor. *See Wright*, 2018 WL 3966253, at *7 (noting that actions such as this "have a value to society more broadly . . . as private law enforcement regimes that free public sector resources") (quoting *Gascho v. Global Health Fitness Holdings, LLC*, 822 F.3d 269, 287 (6th Cir. 2016)).

## B. Class Notice Was Reasonable

The notice program, which the Court has already evaluated, *see* ECF No. 62, at 7–8, was reasonable and satisfied the requirements of Rule 23 and Due Process and constituted the "best notice" practicable under the circumstances, including individual notice to all class members who could be identified through reasonable effort—here, through the Plan's own records. Fed. R. Civ. P. 23(c)(2)(B). The Settlement Administrator sent the Court-approved Settlement Notices to each of the class members via U.S. Mail and email. *See* Vieira Decl. ¶¶ 4–5. This type of notice is presumptively reasonable. *See Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 812 (1985). In addition, SCS established a website and toll-free number for members of the Settlement Class. *See* Vieira Decl. ¶¶ 6–7.

The content of the Notice also was reasonable, as the Notice included *inter alia*: (1) a summary of the lawsuit; (2) a clear definition of the Settlement Class; (3) a description of the material terms of the Settlement; (4) a disclosure of the release of claims; (5) instructions for the submission of Former Participant Claim Forms; (6) instructions as to how to object to the Settlement and a date by which Settlement Class Members must object; (7) the date, time, and location of the Fairness Hearing; (8) contact information for the Settlement Administrator; and (9) information regarding Class Counsel and the amount of attorneys' fees and litigation that they would seek, as well as the anticipated request for a case contribution award for Plaintiff.

These Notices were previously approved by the Court, *see* ECF No. 62, at 7–8, and

"'fairly apprise[] the prospective members of the class of the terms of the proposed settlement' so that class members may come to their own conclusions about whether the settlement serves their interests." *Graybill v. Petta Enterprises, LLC*, 2018 WL 4573289, at *3 (S.D. Ohio Sept. 25, 2018) (quoting *UAW*, 497 F.3d at 630 (citation omitted)). No member of the Settlement Class has claimed that the Notices were deficient, and to the extent they had any questions, they could review the settlement website, call the toll-free telephone line, or contact the Settlement Administrator or Class Counsel.

### C. Certification of the Settlement Class Should be Maintained

In the Preliminary Approval Order, the Court provisionally certified the Settlement Class and appointed Plaintiffs' counsel, Miller Shah LLP ("Miller Shah") and Capozzi Adler, P.C. as Class Counsel. *See* Preliminary Approval Order, ECF No. 62, at 1. None of the circumstances warranting certification at the preliminary approval stage have changed. Thus, for the reasons identified in the Court's Preliminary Approval Order and Plaintiff's Memorandum of Law in Support of the Unopposed Motion for Preliminary Approval of Class Action Settlement, the Settlement Class meets the requirements of Federal Rules of Civil Procedure 23(a) and 23(b)(1). *See generally* ECF Nos. 60-1, 62.

### CONCLUSION

For the reasons explained above, Plaintiff respectfully submits that this Court should finally approve the Settlement.

DATED: December 9, 2022

Respectfully submitted,

*/s/ James C. Shah*
James C. Shah
Alec J. Berin
MILLER SHAH LLP
1845 Walnut Street, Suite 806
Philadelphia, PA 19103

Telephone: (866) 540-5505
Facsimile: (866) 300-7367
Email: jcshah@millershah.com
           ajberin@millershah.com


James E. Miller
Laurie Rubinow
MILLER SHAH LLP
65 Main Street
Chester, CT 06412
Telephone: (866) 540-5505
Facsimile: (866) 300-7367
Email: jemiller@millershah.com
           lrubinow@millershah.com


Ronald S. Kravitz
MILLER SHAH LLP
3 Embarcadero Center, Suite 1650
San Francisco, CA 94111
Telephone: (866) 540-5505
Facsimile: (866) 300-7367
Email: rskravitz@millershah.com


Kolin C. Tang
MILLER SHAH LLP
201 Filbert Street, Suite 201
San Francisco, CA 94133
Telephone: (866) 540-5505
Facsimile: (866) 300-7367
Email: kctang@millershah.com


Jeffrey S. Goldenberg (0063771)
Todd B. Naylor (0068388)
GOLDENBERG SCHNEIDER, LPA
4445 Lake Forest Drive, Suite 490
Cincinnati, OH 45242
Telephone: (513) 345-8291
Facsimile: (513) 345-8294
Email: jgoldenberg@gs-legal.com
           tnaylor@gs-legal.com


*Attorneys for Plaintiff, the Plan and the
Proposed Settlement Class*

## CERTIFICATE OF COMPLIANCE WITH WORD COUNT

I certify that this Memorandum complies with the page and type requirements under

Local Rule 7.2(a)(3) because it is less than 20 pages double-spaced.

*/s/ James C. Shah*
James C. Shah

**CERTIFICATE OF SERVICE**

I hereby certify that on December 9, 2022, I electronically filed the foregoing Plaintiffs'

Memorandum in Support of Unopposed Motion for Final Approval of Class Action Settlement

with the Clerk of Court, and upon the counsel of record using the CM/ECF system.

/s/ James C. Shah
James C. Shah